Larry GODBY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2004–CA–001300–MR.

Court of Appeals of Kentucky.

Oct. 21, 2005.

Discretionary Review Denied by
Supreme Court April 12, 2006.

Case Ordered Published by
Supreme Court April 12, 2006.

Jerry J. Cox, Mt. Vernon, William G.
Crabtree, London, KY, for Appellant.

Gregory D. Stumbo, Attorney General,
Matthew R. Krygiel, Assistant Attorney
General, Frankfort, KY, for Appellee.

Before MINTON and SCHRODER,
Judges; EMBERTON, Senior Judge.[1]

---

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

*OPINION*

SCHRODER, Judge.

Larry Godby appeals his conviction for intimidating a participant in the legal process (KRS 524.040) for which he was sentenced to one year's imprisonment. We opine that a threat to "injure" a person encompasses physical injury only under KRS 524.010(8) and KRS 524.040 as amended effective July 15, 2002. Therefore, we reverse in part.

Larry Godby was appointed chief of police of the Somerset, Kentucky, police department in August, 2002. On October 22, 2003, a Pulaski County grand jury returned an indictment charging Godby with: Count 1, Bribery of a public servant (KRS 521.020); Count 2, Official misconduct in the first degree (KRS 522.020); and Count 3, Intimidating a participant in the legal process (KRS 524.040). The charges arose from two unrelated incidents—Counts 1 and 2 pertaining to Godby's soliciting a donation for a police Christmas party and the subsequent purchase of police cars from the donor's automobile dealership, and Count 3 pertaining to statements made by Godby threatening to fire or demote another officer.

A jury trial commenced May 11, 2004. The jury returned a verdict of not guilty as to Count 1 (Bribery of a public servant), and guilty as to Count 2 (Official misconduct in the first degree) and Count 3 (Intimidating a participant in the legal process). Godby was sentenced to one year's imprisonment for the intimidation conviction, and fined five hundred dollars for the official misconduct. This appeal followed, as to Count 3 only.

The facts relevant to Count 3, which stemmed from a summer, 2003, internal police department investigation, are as follows. The assistant police chief, Ron Swartz, was investigating allegations that Lt. Doug Nelson, the commander of the Criminal Investigations Division ("CID"), had been making statements to subordinate officers of a nature that Godby had taken kick-backs and was "crooked". Godby had directed Swartz to investigate after hearing that Detective Terry Jackson had told Swartz that Nelson was making such statements. Pursuant to his investigation of Lt. Nelson, Swartz interviewed the three detectives who worked for Nelson, one of whom was Detective Barry Erp. Erp was first interviewed by Swartz on July 9, 2003, and told Swartz that he had not heard Nelson make the alleged statements about Godby.

Erp testified that, the next day, July 10, having thought about a question Swartz had asked concerning if he had heard Nelson make statements concerning bribery and a Bobby Brooks, he went back to Swartz. Erp, Godby, and other officers had taken some police cars to Brooks' shop in Nicholasville to be worked on. Brooks had accompanied the officers to Applebees for lunch, and, at Godby's suggestion, Brooks purchased lunch for the group. On July 10, Erp discussed with Swartz his (Erp's) concerns whether Godby and the other officers (including himself) may have committed bribery as a result of this incident.

On July 15, 2003, Erp was called back into Swartz's office. Godby and Swartz were present. Erp testified that, in a very firm, strict tone, Godby told him: "I'm going to make a statement to you and then I'm going to leave this office like we never had this conversation. The major is going to ask you some questions." Godby then told him he was a good detective and good employee and then told him "I don't want to fire you, but I will. I'm the reason you're in CID. I can see that you're removed. You're loyal, but you're loyal to the wrong people, and your memory needs

to get better." Erp testified that he did not know if Godby was referring to his (Erp's) July 9 or July 10 discussion with Swartz. Erp testified that he felt intimidated and threatened by Godby's statements because Godby was saying he would fire him. Erp testified that Godby did not threaten to kill or physically harm him. Godby left the room without asking further questions. Swartz remained, and asked Erp the same questions as on July 9. Erp testified that he had been truthful the first time and that his answers did not change.

The Commonwealth's theory was that Godby was trying to threaten Erp into changing his story in order to implicate Nelson in the internal investigation (for possible insubordination). Swartz and Godby testified that their reason for reinterviewing Erp the second time (the July 15 interview) was because they believed Erp was lying about not having heard Nelson make the statements. Godby did not dispute that he made the statements at issue to Erp, but testified that he did so in an effort to make Erp be truthful about Nelson.[2]

In September, 2003, Godby demoted Erp from detective to patrolman, which resulted in a reduction in pay. Erp testified that he asked Godby why, and Godby responded with something like "Changes need to be made." Godby testified that he demoted Erp because he could no longer trust him, because he learned that Erp had been taping conversations. Godby denied demoting Erp because he would not change his answers about Nelson.

On appeal, Godby argues that the trial court should have directed a verdict of acquittal on Count 3, Intimidating a participant in the legal process, because the evidence introduced by the Commonwealth was insufficient to establish a threat as defined in KRS 524.010(8).[3]

KRS 524.040, "Intimidating a participant in the legal process", states, in pertinent part:

> (1) A person is guilty of intimidating a participant in the legal process when, by use of physical force or a *threat* directed to a person he believes to be a participant in the legal process, he or she:
>
> (a) Influences, or attempts to influence, the testimony, vote, decision, or opinion of that person;
>
> . . . .

(Emphasis added). "Threat", for purposes of KRS Chapter 524, is defined in KRS 524.010(8) as follows:

> (8) "Threat" means any direct threat to kill or injure a person protected by this chapter or an immediate family member of such a person . . . .

---

2. Godby's testimony was similar to Erp's as to the alleged statements. Godby testified that he told Erp: "I want to make a statement to you. I want you to understand that I think you're a good officer and you're a loyal employee, but you're loyal to the wrong person, and I want you to know if I find you've lied to me I'm going to fire you." Godby testified he also made a statement to the effect that "Barry, I hope your memory gets better because right now I feel you're lying to us and we don't want to go there."

3. We are deciding this case on the issue of "threat", although we believe the dispositive

issue may have been whether or not Erp was actually a "participant in the legal process" as contemplated by KRS 524.040 as defined by KRS 524.010(3). *See Priestley v. Priestley,* 949 S.W.2d 594, 596 (Ky.1997) (citations omitted) ("So long as an appellate court confines itself to the record, no rule of court or constitutional provision prevents it from deciding an issue not presented by the parties."). This argument does not appear to have been raised in the lower court, nor was it discussed in the briefs, but first appeared at oral argument. Because we are reversing on the issue of threat, we decline to address this issue.

Godby contends that, as there was no evidence that he used physical force or made a threat to physically injure or kill Erp, the trial court should have granted his motion for directed verdict. The Commonwealth contends that "injure", for purposes of the definition of threat in KRS 524.010(8) encompasses not just physical injury, but economic injury as well and hence, Godby's threat to remove Erp from CID or fire him would qualify.

 It is undisputed that Godby did not threaten to kill or physically injure Erp or anyone else. The issue before this court, therefore, becomes whether the word "injure" as contemplated by KRS 524.010(8) encompasses physical injury only, or economic injury as well. This appears to be an issue of first impression under the most recent version of KRS 524.040.

The current version of KRS 524.040 (applicable to the present case as the alleged threat occurred on July 15, 2003), was effective July 15, 2002. 2002 Kentucky Acts, Ch. 251. Prior to this date, KRS 524.040, then entitled "Intimidating a witness", read, in pertinent part:

(1) A person is guilty of intimidating a witness when, by use of physical force or a threat directed to a witness or a person he believes may be called as a witness in any official proceeding, he:

. . . .

(3) "Threat" as used in this section means any threat proscribed in KRS 514.080.

KRS 514.080, "Theft by extortion", states, in pertinent part, as follows:

(1) A person is guilty of theft by extortion when he intentionally obtains property of another by threatening to:

(a) Inflict bodily injury on anyone or commit any other criminal offense; or

(b) Accuse anyone of a criminal offense; or

(c) Expose any secret tending to subject any person to hatred, contempt, or ridicule, or to impair his credit or business repute; or

(d) Use wrongfully his position as a public officer or servant or employee by performing some act within or related to his official duties, either expressed or implied, or by refusing or omitting to perform an official duty, either expressed or implied, in a manner affecting some person adversely; or

(e) Bring about or continue a strike, boycott, or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act; or

(f) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense.

Effective July 15, 2002, KRS 524.040 was amended to its present form. The language in section (3) defining threat as "any threat proscribed in KRS 514.080" was deleted. Also effective July 15, 2002, KRS 524.010, "Definitions", was amended to add, as section (8), the definition of "threat" as "any direct threat to kill or injure a person protected by this chapter or an immediate family member of such a person. . . ." Godby contends that this change evidences a legislative intent to narrow the definition of threat, for purposes of KRS 524.040, to physical injury.

 "It is beyond dispute that whenever a statute is amended, courts must presume that the Legislature intended to effect a change in the law." *Brown v. Sammons*, 743 S.W.2d 23, 24 (Ky.1988). The previous version of KRS 524.040 incorporated the definition of threat in KRS 514.080, which detailed numerous acts which constituted a threat. When the leg-

islature amended KRS 524.040, it must have intended to effect a change. *Id.* The question then becomes whether the legislature intended to expand or restrict the definition of "threat". We believe substitution of the short phrase definition ("to kill or injure a person") of KRS 524.010(8) for the previous multi-paragraph definition of KRS 514.080 evidences an intent to restrict the meaning of "threat". The use of "injure" following "to kill" evidences a limitation on the type of injury to physical injury, not economic, etc., injury. *See Thompson v. Bracken County,* 294 S.W.2d 943, 946 (Ky.1956) ("Simple words when considered in a statute are generally accorded their ordinary and accepted meaning."). The limitation of "injure" to physical injury only is further evidenced when "threat" is viewed in context of KRS 524.040, "by *use* of physical force *or* a *threat* directed to a person . . ." (emphasis added). *See Department of Motor Transp. v. City Bus Co.,* 252 S.W.2d 46, 47 (1952) (whole statute may be considered in interpreting meaning). This conclusion is consistent with another principle of statutory construction, the "rule of lenity", which requires, in construing an ambiguous penal statute, to give to the appellant the benefit of the doubt. *Roney v. Commonwealth,* 695 S.W.2d 863, 864 (Ky.1985). *See also, Woods v. Commonwealth,* 793 S.W.2d 809, 814 (Ky.1990); *Commonwealth v. Lundergan,* 847 S.W.2d 729, 731 (Ky.1993); *Commonwealth v. Colonial Stores, Inc.,* 350 S.W.2d 465, 467 (Ky.1961). "Penal statutes are not to be extended by construction, but must be limited to cases clearly within the language used." *Woods,* 793 S.W.2d at 814.

Because Godby made no threat of physical injury, the circuit court should have directed a verdict of acquittal on Count 3. This conclusion renders Godby's remaining arguments moot.

For the foregoing reasons, the judgment of the Pulaski Circuit Court is affirmed as to Count 2 and is reversed as to Count 3, and the matter remanded for proceedings consistent with this opinion.

ALL CONCUR.