Brian Dewayne EDMONDS, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–SC–000395–MR.

Supreme Court of Kentucky.

June 19, 2014.

Daniel T. Goyette, Louisville Metro Public Defender of Counsel, Office of the Louisville Metro Public Defender, Elizabeth B. McMahon, Assistant. District Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Matthew Robert Krygiel, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Brian Dewayne Edmonds, appeals his convictions for first-degree sodomy, intimidating a participant in the legal process, second-degree wanton endangerment, third-degree terroristic threatening, and being a Persistent Felony Offender (PFO) in the first degree. On appeal, he alleges two errors. First, he argues the trial court failed to properly limit the testimony of the sexual assault nurse examiner, and thereby committed reversible error. Second, Appellant argues the trial court erred by failing to grant his motion for a directed verdict on the charge of intimidating a witness in the legal process. For the reasons stated herein, the Court affirms Appellant's convictions and sentence.

## I. Background

On July 14, 2010, twenty-year-old J.H. reported she had been sexually assaulted by Appellant, her boyfriend at the time. The couple lived together in an apartment with her three children when the sexual assault occurred. According to J.H., there was tension between the couple because she was attending school and had reconnected with some old friends on Facebook. She also suspected Appellant harbored resentment toward her because she had recently had an abortion.

On the evening of July 13, J.H. was in the living room of her apartment, wearing only a t-shirt, when Appellant became upset with her around midnight, after he discovered she was using her cell phone to send a Facebook message to a male friend. He attacked J.H. after he asked her if she wanted him to leave, and she replied, "Yes, if you want to."

J.H. testified Appellant choked her and dragged her by the hair into their bedroom. He repeatedly asked her why she was doing this to him, why she did not love him, and stated she should not have killed their baby, referencing the abortion she had earlier that year.

Appellant had a gun during the attack, and threatened J.H. with it repeatedly. He removed her t-shirt and used a roll of duct tape that had been sitting on the couple's nightstand to bind her legs together. Appellant then grabbed a tube of Neosporin and spread it on his penis, turned J.H. over so she was laying face down on the bed, and inserted his penis into her anus.

J.H. testified that Appellant had smothered her during the attack by pressing her face into the bed, and that the anal intercourse continued for approximately two minutes before she started to bleed. Appellant then retrieved a towel and bucket of water, wiped away blood from both of them, and then penetrated her vagina with his penis.

Appellant eventually allowed J.H. to go into the living room near the air conditioner because she complained she could not catch her breath. She wrapped herself in a sheet from the bed. He had told her she could not leave the apartment, but when he went to the bathroom, she escaped and ran toward two men who happened to be outside under a tent, where they had hooked up a television and were, in J.H.'s words, "playing games." Outside, she saw a friend, and ran to him asking to use his phone. Because of her state, he asked her why she wanted to use the phone, and she told him to call her mother. But as she took the phone and began to dial, Appellant ran out of the apartment and knocked

the phone out of her hand. She ran around the tent, with him chasing her and waving his gun.

He chased her back toward their apartment, and she held on to a railing to keep him from dragging her inside. He continued hitting her and trying to drag her inside. Her friend approached, telling him to stop, and stating that his mother had called the police. Defiant, Appellant continued trying to drag J.H. inside, screaming that it was too late, he had already messed up and that he would shoot it out with the police. But before the police arrived, he took J.H.'s cell phone and keys and fled the scene.

After an investigation, J.H. was transported to the hospital. A warrant was issued for Appellant's arrest, and he was eventually taken into custody.

At trial, Appellant was convicted of first-degree sodomy, second-degree wanton endangerment, intimidating a participant in the legal process, third-degree terroristic threatening, and being a first-degree PFO. He was found not guilty of first-degree rape. Appellant was sentenced to thirty years' imprisonment.

He now appeals his conviction and sentence as a matter of right. *See* Ky. Const. § 110(2)(b).

## II. Analysis

### A. Testimony of the Sexual Assault Nurse Examiner

■ Appellant argues that Melissa Edlin, a sexual assault nurse examiner (or SANE), was improperly allowed to testify as to hearsay statements of the victim and to give her opinion about the source of the victim's injuries.[1] "Rulings upon admissibility of evidence are within the discretion of the trial judge; such rulings should not be reversed on appeal in the absence of a clear abuse of discretion." *Simpson v. Commonwealth,* 889 S.W.2d 781, 783 (Ky. 1994). Having reviewed the record, we find the trial court did not abuse its discretion in admitting Edlin's testimony.

Edlin examined J.H. at the University of Louisville Hospital after the sexual assault. As part of her examination, Edlin interviewed J.H., examined and documented her injuries, collected items for forensic analysis, and prepared a written report. She testified about her findings at trial, frequently reading them from her report. Of particular significance, she repeated various statements from the victim about what had happened to her, including the victim's specific statement "We never had anal intercourse,"[2] and testified that the victim's injuries to her neck were consistent with what the victim had reported.

Appellant argues that the totality of Edlin's testimony was inadmissible because it served only to corroborate the victim's testimony by proof that she had previously made the same statements to Edlin, and it was not proper prior-consistent-statement testimony absent a recent claim of fabrication or improper influence. Thus, in Appellant's view, Edlin's testimony was duplicative and without its own probative force,

---

1. At trial, Appellant's counsel also claimed that this hearsay testimony would violate Appellant's confrontation rights. This claim has not been made on appeal, nor would it be successful, since the victim testified and was subjected to cross-examination.

2. To clarify, the victim's statement "We never had anal intercourse," was made in reference to her past sexual history as part of Edlin's examination. It was meant as a statement that the victim and Appellant had not previously engaged in anal intercourse before the sexual assault at issue in this case, and not that anal intercourse did not occur during the course of the assault. *See infra* pp. 314–16.

and its admission acted only to bolster the victim's testimony. This, Appellant claims, is clearly forbidden under Kentucky law. *See Dickerson v. Commonwealth,* 174 S.W.3d 451, 472 (Ky.2005) ("It is improper to permit a witness to testify that another witness has made prior consistent statements, absent an express or implied charge against the declarant of recent fabrication or improper influence. KRE 801A(a)(2). Otherwise, the witness is simply vouching for the truthfulness of the declarant's statement, which we have held to be reversible error."); *Smith v. Commonwealth,* 920 S.W.2d 514, 517 (Ky.1995) ("[A] witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony." (quoting *Eubank v. Commonwealth,* 210 Ky. 150, 275 S.W. 630 (1925))).

Appellant's argument is misguided, however. That the statements repeated by the SANE were consistent with the victim's trial testimony does not mean they automatically fall under the rule discussed in *Dickerson* and *Smith.* Appellant's argument misconstrues how the rule governing the admission of prior consistent statements operates, and mistakenly treats it as an independent bar to certain testimony.

The bar on out-of-court statements, whether they are consistent with trial testimony or not, is not in KRE 801A or any other hearsay exception rule; it is in the hearsay rule itself. *See* KRE 802 ("Hearsay is not admissible except as provided by these rules or by rules of the Supreme Court of Kentucky."). The rule that *Dickerson* and *Smith,* and the Appellant, are concerned with is KRE 801A(a)(2), which excludes certain statements from the hearsay rule, so long as they meet its requirements. This rule is not a bar to the admission of testimony and can only ever be authority for the admission of evidence despite the hearsay prohibition in KRE 802. If a prior consistent out-of-court statement is offered into evidence, and it fails KRE 801A(a)(2), it is inadmissible because it is hearsay and barred by KRE 802, not because it is a non–801A–conforming statement. The suggestion in *Dickerson* and *Smith* that a witness cannot be corroborated with prior consistent statements unless there is a charge of recent fabrication or improper influence is not a blanket bar on such statements; rather, it is a bar only when they are offered as prior consistent statements under KRE 801A(a)(2). The "rule" in *Dickerson* and *Smith* is really a rule about KRE 801A(a)(2) and operates only within that context; it is not a rule for all out-of-court statements that might be consistent with a witness's testimony.

Appellant mistakenly assumes that because some of the statements Edlin testified to were prior consistent statements, then those statements can only be admitted through KRE 801A(a)(2). But that notion is simply incorrect. Hearsay analysis must always begin with an evaluation of whether the out-of-court statement is barred by the hearsay prohibition. Failure to consider this first step of analysis incorrectly leads to a focus on the hearsay exceptions as the source of inadmissibility. This incorrect method of analysis is evident in the common practice of leaping to a single (and usually the most obvious) hearsay exception and, upon seeing that the proof does not meet the exception, assuming the proof is wholly inadmissible, simply because it does not meet that single exception. The assumed step in such analysis, of course, is that the statement in question is hearsay that is barred by KRE 802 absent an exception. But that assumption can lead to the improper pigeonholing of the statements as lawyers try to fit them only under a single hearsay exception and failing to do so, they assume the

statements are inadmissible. In truth, an out-of-court statement will often fall under multiple hearsay exceptions in KRE 801A, 803, or 804, but it need only satisfy one of those exceptions (and, of course, be relevant and survive KRE 403) to be admissible.

■ That is exactly what happened in this case. Appellant's argument assumes that because Edlin repeated some prior statements that are consistent with the victim's testimony, the admissibility of those statements can only be controlled by the prior-consistent-statement rule. For example, Edlin repeated the victim's statement about the source of the injuries to her neck (manual strangulation), which was consistent with the victim's trial testimony. Because the statement was consistent with the victim's trial. testimony, it potentially implicated KRE 801A(a)(2). But that statement was independently admissible under KRE 803(4), the exception for statements for the purpose of medical diagnosis or treatment. Thus, the fact that there was no allegation of a recent fabrication, which is necessary for the statement to be admissible as a prior consistent statement under KRE 801A(a)(2), is irrelevant, as there is another ground to support admission of the out-of-court statement.

Additionally, Appellant's argument in this regard is vague, largely because he has not identified specific hearsay statements that fail to meet the requirements of KRE 801A(a)(2). The hearsay rules are, unsurprisingly, concerned with the admission of hearsay evidence, that is, out-of-court statements offered for the truth of the matter asserted. KRE 801(c). And, as noted above, the exception to the hearsay prohibition in KRE 801A(a)(2) is about prior consistent statements, that is, repeated out-of-court statements also made by a witness in her own testimony. Thus, while it is true that "a witness cannot be corroborated by proof that on previous occasions he has made the same *statements* as those made in his testimony," *Smith,* 920 S.W.2d at 517 (emphasis added), without complying with KRE 801A(a)(2) (or some other hearsay exception), the rule (and more importantly, the rule barring hearsay) has no effect on a witness's independent observation that corroborates the other person's testimony. Simply, KRE 801A(a)(2) is only applicable to prior consistent statements, *not* additional consistent testimony based on personal knowledge. Thus, to the extent that Edlin's testimony was based on her independent examination, Appellant's argument would not even be applicable.

■ Appellant does complain about one specific instance of Edlin's repetition of a statement made by the victim. Specifically, he alleges that Edlin's repetition of the victim's statement "We never had anal intercourse" fell outside KRE 803(4), as a statement not for the purpose of medical diagnosis or treatment. Further, he complains that even if the statement was partially admissible under KRE 803(4), it went beyond the scope of the rule because it identified him as the perpetrator of the crime. Despite some reservations, the Court concludes that this issue is preserved for appeal.[3] Edlin repeated the

---

**3.** Appellant's counsel objected several times in the course of Edlin's testimony. At first, Appellant's counsel only objected that the introduction of Edlin's testimony was a violation of his confrontation rights. This was clearly not true as both the victim and Edlin were available for cross-examination at trial.

*See James v. Commonwealth,* 360 S.W.3d 189, 203 (Ky.2012) ("But [the victim] was available and actually testified in this case. She was cross-examined—and therefore confronted—by the defense. Thus, admission of any statements made by her to the SANE did not violate *Crawford,* since a confrontation viola-

statement at issue in response to being asked about the victim's answers to questions about her personal medical history, specifically whether the victim had recent consensual sexual activity or recent injuries to her genitals.

■ KRE 803(4) provides that out-of-court statements "made for purposes of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis," are not excluded by the hearsay rule. In determining whether a statement falls within the scope of KRE 803(4), it must be determined whether the content of the declarant's statement was of the type "reasonably relied on by a physician in treatment or diagnosis," *Colvard v. Commonwealth*, 309 S.W.3d 239, 245 (Ky.2010) (quoting *Morgan v. Foretich*, 846 F.2d 941, 949 (4th Cir.1988)), and arose from the declarant's purpose of promoting treatment. *Id.* There is little doubt that a statement about recent anal sexual activity is relevant to the "inception or general character of the cause or external source" of an injury to the anus reported to be the product of nonconsensual sex, and is the type of statement that a physician may rely on in treatment or diagnosis. In-

deed, this information is critical in discerning the source of a victim's injuries by excluding other possible causes of injury. Further, this Court is satisfied a victim's motive in making a statement excluding a possible source of her injuries is consistent with promoting her treatment for those injuries. Thus, Appellant's claim that the answer did not meet KRE 803(4) is simply incorrect.

■ Of greater concern is Appellant's claim that the statement improperly identified him as the victim's assailant. Under KRE 803(4), "the general rule is that the identity of the perpetrator is not relevant to treatment or diagnosis." *Colvard*, 309 S.W.3d at 244. This Court has a long history of finding this type of hearsay extremely prejudicial when repeated by a professional on the stand. *See Colvard*, 309 S.W.3d at 247 (recognizing extreme prejudice and reversible error due to physician's testimony repeating hearsay of alleged victim of sexual abuse identifying defendant as alleged perpetrator); *Sharp v. Commonwealth*, 849 S.W.2d 542, 545 (Ky.1993). Nevertheless, we believe this case is distinguishable and that prejudice is not present in this case.

In previous cases, the hearsay statements directly identified the defendant as committing the *charged criminal offense* in that case.[4] Unlike those previous cases,

---

tion can only occur if the defendant is unable to cross-examine the declarant."). It was not until another bench conference, and an additional objection, that Appellant's counsel finally objected that Edlin's testimony that J.H. stated "we" had never had anal intercourse before was outside the scope of KRE 803(4). Appellant's argument on appeal that Edlin's statement identified him as a perpetrator was not specifically discussed by Appellant's trial counsel; however, it was discussed by the trial court during a bench conference. Since Edlin read the challenged statement into the record after the second objection that was based on hearsay and the identity of the

perpetrator in the statement, we will treat this issue as preserved.

4. In *Alford v. Commonwealth*, 338 S.W.3d 240, 247 (Ky.2011), a medical doctor testified that "[the child victim] told him that, on the evening of January 28, 2001, she had reported to her stepmother that she had been repeatedly raped over a number of years by 'her mother's boyfriend.'" In *Colvard v. Commonwealth*, 309 S.W.3d 239, 243–47 (Ky.2010), we held the admission of hearsay statements by medical professionals that the child victims had told them, "Fred from number seven [the defendant] ... stuck his 'dick' in her," and

which Appellant has cited as supporting authority, Edlin's repetition of J.H.'s statement did not directly identify Appellant as J.H.'s rapist. The statement, at most, only indirectly identified Appellant as the perpetrator, and even then, that is only the case when considered in light of all the other evidence in the case, which included the victim's testimony that Appellant was the perpetrator. Without the context of trial, the victim's statement was only that she and Appellant had never before engaged in anal intercourse.

The facts of this case do not fall under the line of cases holding that identification of a sexual assailant is not a statement for purposes of medical treatment. Although there was an indirect identification of the perpetrator, the identification portion of the answer was inextricably intertwined with the information directly relevant to medical treatment. Edlin was seeking to exclude other possible causes of the injuries in the recent past. Since the victim was in a relationship with Appellant, questions about the victim's recent sexual activity would inevitably touch on that relationship. The underlying purpose of the statements was for medical treatment for injuries related to a violent sexual attack, and we do not believe the trial court abused its discretion by admitting this portion of Edlin's testimony.

■ Appellant's last complaint is that Edlin should not have been permitted to testify that J.H.'s injuries were consistent with the story J.H. told about how she got them or were consistent with injuries that Edlin had seen in other patients that had reported being strangled.

Edlin testified about the victim's symptoms, including that she complained of being hoarse and having trouble breathing and swallowing, and that she had contusions and abrasions on her neck. She also testified that these symptoms were consistent with strangulation, which produces similar symptoms. She also testified that abrasions (scratches) on the neck can come from the attacker or be self-inflicted by the victim's attempts to pry the attacker's hands off, and that the victim's abrasions were consistent with strangulation. This testimony was based at least in part on her observations of other people claiming to have been strangled.

Appellant claims that this testimony invaded the province of the jury to weigh evidence and determine credibility. Appellant's counsel objected to this entire line of questioning, complaining that Edlin had not actually seen the other patients being strangled and should not be allowed to compare this case to others in which a victim had claimed to have been choked. The trial court did not abuse its discretion in admitting the testimony.

■ Appellant's complaint about this testimony is misconceived. His objection, at least based on what his trial counsel stated, should be that Edlin did not have sufficient training, experience, or education to compare the victim's injuries to her story or similar injuries in other people. Instead, he complains that this opinion testimony invaded the province of the jury. But the trial court specifically found that Edlin could give this opinion in light of her training and experience. This is essentially a finding that Edlin could give expert testimony.[5] And experts, unlike lay

"Fred has been f* * *ing her, putting his weenie in her private parts," among other statements constituted reversible error because the identification of the defendant in that case fell outside the bounds of KRE 803(4).

5. The Appellant has not complained that Edlin was not properly qualified as an expert, nor did he ask for a *Daubert* hearing.

witnesses, are allowed to reach factual conclusions so long as they assist the trier of fact. *See Stringer v. Commonwealth*, 956 S.W.2d 883, 889 (Ky.1997).

Despite Appellant's attempt to cast Edlin's testimony as having compared this case to others in which choking was alleged and as having no real basis in her own experience, it appears from our review of the record that Edlin's testimony was typical of medical personnel. Edlin testified that the abrasion on J.H.'s neck was consistent with other injuries Edlin had seen in her experience—namely, a perpetrator scratching a victim in her or his attempt to strangle a victim or a victim scratching herself or himself in an effort to pry an attacker's hand from her or his neck.

The bar for expertise is not set so high as to require an expert to actually see injuries being caused—even in an experimental setting—in order to gather sufficient data to state when an injury is consistent with a certain cause. It is clear from the record, however, that Edlin, as a SANE working in an emergency room, had training and experience related to abrasions similar to those on the victim, and could testify that the victim's injuries were consistent with injuries to other victims who stated they had been scratched by their attacker or scratched themselves in an effort to stop being choked. Considering the testimony in context, it is clear that Edlin, in substance, was testifying that the abrasions on the victim's neck were consistent with her report that she had been strangled. Such consistency testimony is admissible. *See, e.g., Stringer v. Commonwealth*, 956 S.W.2d 883, 889 (Ky. 1997) (allowing testimony that vaginal injuries were consistent with victim's history and with the alleged cause of the injuries); *Meadows v. Commonwealth*, 178 S.W.3d 527, 538 (Ky.App.2005).

**B. Directed–Verdict Issue**

■ Appellant also argues that the trial court erred by failing to grant his motion for a directed verdict on the charge of intimidating a witness in the legal process. Specifically, he argues that the Commonwealth failed to present sufficient evidence that he believed J.H. to be "a participant in the legal process" when he chased after her with a gun. This issue is preserved for appeal.

■ A trial court presented with a motion for a directed verdict, "must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth" and "[i]f the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). On appellate review, a directed verdict decision will be reversed only "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Id.*

Appellant was convicted under KRS 524.040(*l* )(f). As such, the Commonwealth was required to show that Appellant

> by use of physical force or a threat directed to a person he believes to be a participant in the legal process ... [h]inder[ed], delay[ed], or prevent[ed] the communication to a law enforcement officer or judge of information relating to the possible commission of an offense or a violation of conditions of probation, parole or release pending judicial proceedings.

KRS 524.040(*l* )(f).

The Commonwealth's theory at trial was that the crime occurred when Appellant chased J.H. outside the apartment with a gun and stopped her from using her neighbor's phone. The proof at trial established that Appellant ran up to J.H. and grabbed

her neighbor's phone from her hand as she was dialing, and then chased her with a gun back toward their home, and eventually took her cell phone and keys when he fled the scene. In the prosecution's view, Appellant's actions and words made it clear not only that he believed J.H. was attempting to contact the police, but also that he was attempting to do anything he could to prevent her from doing so.

Appellant argues the Commonwealth failed to prove his belief that J.H. was a participant in the legal process, and cites our decision in *Moreland v. Commonwealth*, 322 S.W.3d 66 (Ky.2010), as determinative of whether he should have been granted a directed verdict on this question. In *Moreland*, we held the defendant, a serial rapist who threatened to kill his victims if they contacted police, was entitled to a directed verdict of acquittal as to all of his convictions for intimidating a participant in the legal process. Our analysis in *Moreland* focused on the 2002 amendments to KRS 524.040. Before 2002, the offense was called "intimidating a witness." The part of the statute at issue in *Moreland* provided:

> A person is guilty of intimidating a witness when, by use of physical force or a threat of physical force directed to *a witness or a person he believes may he called as a witness* in any official proceeding, he ... influences, or attempts to influence, the testimony of that person....

KRS 524.040(1)(a) (1986) (emphasis added).[6]

In 2002, however, the statute was amended. *See* 2002 Ky. Acts Ch. 251, § 2.

The offense is now called "intimidating a participant in the legal process." The statute now reads that a person is guilty of "intimidating a participant in the legal process when, by use of physical force or a threat of physical force to *a person he believes to be a participant in the legal process,* he or she ... [commits one of several acts]." KRS 524.040(1) (2002) (emphasis added). In essence, the amendment appeared to change who the victim of the offense could be, but left intact certain acts that would constitute the crime (such as influencing the person or hindering the person's reporting of a crime).

In *Moreland,* the Court found that the amendment amounted to a fundamental shift in the purpose of the statute, which post–2002 "requires the accused threaten a person he believes *to be* a participant in the legal process," 322 S.W.3d at 69, rather than the pre–2002 statute which merely required "that the victim be anyone who *may* be called as a witness." *Id.* The basic change was a shift in use of a future tense ("may be called as a witness") to the present tense ("to be a participant"). *Id.* This, the Court reasoned, "limited the class of potential victims," *id.,* in that the statute now "require[s] that the perpetrator believe[ ] the victim is participating in the legal process *at the time the offense is committed,*" *id.,* whereas previously the perpetrator could believe that the victim would be a witness *after* the time of the offense.

Because no legal proceedings had been initiated at the time of the attacks in *Moreland,* the Court held it was "impossible to conclude that [the defendant] be-

---

**6.** Subparts (1)(b) through (1)(f) of the statute provided other ways of committing the offense, including "[h]inder[ing], delay[ing], or prevent[ing] the communication to a law enforcement officer or judge of information relating to the possible commission of an offense or a violation of conditions of probation, parole or release pending judicial proceedings." KRS 524.040(1)(f) (1986). This method of committing the crime is the one at issue in this case.

lieved any of the three victims 'to be a participant in the legal process' at the time of the offenses since no legal process yet existed, nor could Appellant have believed that any legal process had been initiated." *Id.* at 70. For that reason, we held the defendant in that case could not be convicted of an offense under KRS 524.040(1)(a).

But, because of the way the issue was framed to the Court, we failed to consider the full text of the amendments, which changed both KRS 524.040 and other statutes in the chapter, including the definitional provision.

KRS 524.040(2) specifically anticipates that the crime can occur before specific legal proceedings have begun. KRS 524.040(2)(a) states that "[f]or purposes of this section . . . [a]n official proceeding need not be pending or about to be instituted at the time of the offense." This is directly at odds with our holding in *Moreland*, 322 S.W.3d 66 at 70. No doubt, this subsection was included in the statute because the intuitive reading of the rest of the statute suggests the victim must already be involved in the legal system. In *Moreland,* we mistakenly relied only on an intuitive reading of the statute. The net effect of subsection (2) is to clarify that under this version of the statute, there does not have to be an existing legal proceeding in order for the statute to apply. As a matter of policy, if the legal process *could* be invoked, and a defendant intends to prevent a victim from participating in the legal process, then this statute can apply.

Our mistake in *Moreland* was in part in equating "the legal process" with an individualized case or "official proceeding." But, as KRS 524.040(2)(a) shows, the statute is not about a participant in a specific legal proceeding. Instead, it is about a "participant in *the* legal process," KRS

524.040(1) (emphasis added), meaning the entire legal system. Indeed, this is supported by the fact that "participant in the legal process" is defined in part to include "any judge, prosecutor, [or] attorney defending a criminal case." KRS 524.010(3). Those persons, as judicial officers or licensed attorneys (and thus officers of the court) are always participants in the legal process, by nature of their roles. Of course, the statute refers at times to "official proceedings," referring to an individual case, as it does in KRS 524.040(2)(a), but it does so to show that a specific case does not yet have to exist for the crime of intimidating a participant in *the* legal process to occur.

That this is the correct reading of the statute is definitively shown by other amendments to the statutory scheme. For example, when the General Assembly amended KRS 524.040 in 2002, it also amended KRS 524.010, which provides the definitions for KRS Chapter 524. *See* 2002 Ky. Acts ch. 251, § 1. First, the General Assembly added the definition of "participant in the legal process," which "means any judge, prosecutor, attorney defending a criminal case, juror, or *witness* and includes members of the participant's immediate family." KRS 524.010(3) (emphasis added). Second, the General Assembly added a definition of "witness," which "means any person who *may be called* to testify in an official proceeding, has been called to testify in an official proceeding, is testifying in an official proceeding, or who has testified in an official proceeding." KRS 524.010(9) (emphasis added). Thus, the potential victims under KRS 524.040 ("participants in the legal process") include "witnesses," which includes people who "may be called" to testify.

These added definitions further exclude the intuitive reading of the statute because

they suggest that a person is a "participant in the legal process" because of the participant's role in the overall legal system (or, as with witnesses, the participant's potential role), not because of their participation in a specific legal action. While that may not comport with the ordinary understanding of "participant in the legal process," since it does not require that the person already be involved in that process, the legislature's decision to define the phrase at issue excludes that ordinary understanding. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 226–28 (2012) ("When . . . a definitional section says that a word 'means' something, the clear import is that this is its *only* meaning. . . . [T]he established meaning of a word must yield to the statutory definition."). Instead of the common understanding of the defined term, "the term and its definition are to be interchangeable equivalents," *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 126, 55 S.Ct. 60, 79 L.Ed. 232 (1934), meaning that the definition can be substituted for the term.

Thus, for example, the statute also includes "judges" within the definition of "participant in the legal process." KRS 524.010(3). The common understanding of "judge" would be a sitting judge, but the judge in question does not yet have to be involved in the legal process at the time of the crime. This is because "judge" is defined to include the obvious—sitting judges—but also "includes persons who have been elected or appointed, but have not yet taken office." KRS 524.010(1); *see also* KRS 524.010(8) ("Persons protected by this chapter include persons who have

been elected or appointed but have not yet taken office.").

Thus, by simply substituting the definitions in question, "participant in the legal process" becomes "witness." And "witness," in turn becomes "any person who may be called to testify in an official proceeding." In other words, when the purported victim is a witness, including, by definition, a potential witness, the statute works in the same way as it did before the 2002 amendments. The amendment was thus intended to expand the scope of the former witness-intimidation statute to include other participants in the legal system.[7] It was never intended to narrow the reach of the statute.

Of course, an argument can be made that delinking the crime from a victim's present participation in a legal action could lead to absurd consequences, especially with respect to "witnesses," since everyone is potentially a witness in a future legal proceeding. Arguably, a prosecutor could abuse the statute to turn every threat into a felony under the guise that the threatened person is a "witness" in the sense that the person "may be called to testify" at *some* point in the future. But absurd application of the statute is avoided by KRS 524.040(4), which states that "[i]n order for a person to be convicted of a violation of this section, the act against a participant in the legal process or the immediate family of a participant in the legal process shall be related to the performance of a duty or role played by the participant in the legal process." Thus, a prosecutor cannot say that any threat against a potential witness, or any other "partici-

---

7. Really, the General Assembly consolidated what had previously been several offenses spread over several provisions in KRS Chapter 524 into a single offense—"intimidating a participant in the legal process". In the same 2002 amendments, which gave us the definition of "participant in the legal process" that

includes judges, prosecutors, witnesses, and jurors, the General Assembly deleted the statutes criminalizing harassing a witness, 2002 Ky. Act ch. 251, § 6 (repealing KRS 524.045), intimidating a juror, *id.* (repealing KRS 524.080), and intimidating a judicial officer, *id.* (repealing KRS 524.120).

pant," is covered by the statute; the threat must be linked to intimidating the victim because of his or her role in the legal process.

Moreover, there must be at least some reasonable nexus with the legal process, even if a case is not yet initiated. Even the definition of witness, which includes a person who "may be called to testify in an official proceeding," KRS 524.040(9), allows for this requirement. If there is no chance of an official proceeding occurring (because, for example, the defendant has not yet committed a crime before the threat and does not plan to commit a crime other than the threat), then it is hard to see how the threatened victim "may be called to testify."

But it is certainly apparent to a person who commits a crime that the victim *may* be a witness against him in a legal proceeding. Here, the jury could reasonably believe that when Appellant saw J.H. making a phone call she was calling the police. And, the jury could believe that when he chased her back to the apartment and tried to drag her back inside, his intention was to prevent her from telling anyone about the crime he committed against her, and that he succeeded in hindering or delaying the reporting of the crime to the police. For that matter, the same motivation applied when he tried to prevent her from leaving the apartment in the first place. Under KRS 524.040(2), it is not necessary that an official proceeding be pending, or even about to be instituted, at the time of the offense. Appellant merely had to intentionally hinder or delay J.H. from reporting the crime he committed that could legally result in criminal charges being brought against him.

While the General Assembly moved the "may be called" language from the substantive offense statute, KRS 524.040(1), to the definition statute, KRS 524.010, it did not, as we stated in *Moreland,* remove the language from the statutory scheme altogether. The simple fact is that the statute covers the same class of "witnesses"—past, present, and future—that it did before 2002. Indeed, far from "limit[ing] the class of potential victims," *Moreland,* 322 S.W.3d at 69, the General Assembly's 2002 amendments greatly expanded the class of potential victims from witness (both present and future) to include judges, jurors, prosecutors, and defense attorneys, and members of the immediate family of all those listed.

Because "witness" is defined to include a person who "may be called" as a witness, and that definition is included in the definition of "participant in the legal process," KRS 524.010(3), a person may still be guilty of an offense under KRS 524.040 when the victim is a person who may be called as a witness in an official proceeding in the future, even if the official proceeding has not yet begun or is not about to begin pursuant to KRS 524.040(2). To the extent that *Moreland* holds otherwise, it is hereby overruled.

Considering our discussion above and the facts of the present case, we believe Appellant was not entitled to a directed verdict of acquittal. The evidence presented by the Commonwealth would not render it unreasonable for a jury to find that Appellant intimidated a participant in the legal process by hindering or delaying J.H.'s reporting of a crime.

### III. Conclusion

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. MINTON, C.J.; ABRAMSON and KELLER, JJ., concur. VENTERS, J., dissents by separate opinion in which CUNNINGHAM and SCOTT, JJ., join.

VENTERS, J., Dissenting.

Because I disagree with the Majority's decision to discard *Moreland,* a sound and unanimous decision rendered by this Court less than four years ago, I dissent. I also believe the Majority misinterprets *Moreland.*

Specifically, I challenge the Majority's assertion that in *Moreland* this entire court "failed to consider the full text" of KRS 524.040(2)(a) and, consequently, was not aware that the current statute provides that one may be guilty of Intimidating a Participant in the Legal Process even when no legal proceeding was pending or imminent.[8] I also reject the Majority's assertion that in *Moreland* we mistakenly conflated the terms "legal process" and "official proceeding." We did not. In fact, the holding in *Moreland* rests upon its recognition that "the legal process" is not the same as "an official proceeding."

A proper reading of *Moreland* and the proper resolution of this case depends upon the recognition that "the legal process" referred to in KRS 524.040(1) is *not* the same thing as "an official proceeding" mentioned in KRS 524.040(2)(a). The present tense verb, *"to be,"* in KRS 524.040(1) does not pertain to a pending or future "official proceeding," but it does indeed apply to "the legal process." So, while the current existence of an "official proceeding" is not an element of the crime, the contemporaneous existence of "the legal process" most certainly *is:* "A person is guilty of intimidating a participant in the legal process when [he threatens or uses force against] a person he believes *to be a participant in the legal process."* KRS 524.040(1) (emphasis added).

The gist of *Moreland* has nothing to do with whether the victims were or might become participants in an "official proceeding." At stake in *Moreland* was whether, at the time of Moreland's threats, his victims were then and there involved in "the legal process." *Moreland* rests upon the premise that the commission of a rape is not a "legal process" and so the victims were not participants in a "legal process" when Moreland threatened to kill them if

---

8. KRS 524.040 provides:

(1) A person is guilty of intimidating a participant in the legal process when, by use of physical force or a threat directed to a person he believes to be a participant in the legal process, he or she:

(a) Influences, or attempts to influence, the testimony, vote, decision, or opinion of that person;

(b) Induces, or attempts to induce, that person to avoid legal-process summoning him or her to testify;

(c) Induces, or attempts to induce, that person to absent himself or herself from an official proceeding to which he has been legally summoned;

(d) Induces, or attempts to induce, that person to withhold a record, document, or other object from an official proceeding;

(e) Induces, or attempts to induce, that person to alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; or

(f) Hinders, delays, or prevents the communication to a law enforcement officer or judge of information relating to the possible commission of an offense or a violation of conditions of probation, parole or release pending judicial proceedings.

(2) For purposes of this section:

(a) An official proceeding need not be pending or about to be instituted at the time of the offense; and

(b) The testimony, record, document, or other object need not be admissible in evidence or free of a claim of privilege.

(3) Intimidating a participant in the legal process is a Class D felony.

(4) In order for a person to be convicted of a violation of this section, the act against a participant in the legal process or the immediate family of a participant in the legal process shall be related to the performance of a duty or role played by the participant in the legal process.

they called the police. Being raped (as in *Moreland*), or being chased by a rapist with a gun (as in the instant case), is not synonymous with being a participant in "the legal process." What is occurring is a crime, which is not "the legal process," and if it is a "process" at all, it is an illegal process.

By overruling *Moreland*, the Majority now holds that every crime-in-progress is, in effect, a "legal process." Consequently, almost any crime involving a criminal/victim confrontation will be tethered to the additional felony of Intimidating a Participant in the Legal Process because the victims of such crimes are typically intimidated.

The phrase "legal process" is no stranger to our jurisprudence. The Kentucky Court of Appeals recently addressed virtually the same question presented here in *Barefield v. Commonwealth*, 2011–CA–001851–MR, 2013 WL 2450529 (Ky.Ct.App. June 7, 2013). In *Barefield*, an assailant (Barefield) interrupted his victim's effort to call police by grabbing and destroying her cell phone. He then raped her. Following *Moreland*, the Court concluded that Barefield could not be convicted of Intimidating a Participant in the Legal Process because the victim was not involved in the legal process at the time he destroyed her phone. Its analysis of "the legal process" deserves our attention:

> We do not agree that if the jury believed Barefield knew Smith was attempting to call the police, it follows he believed Smith was a participant in the legal process. While KRS 524.040(2)(a) states "[a]n official proceeding need not be pending or about to be instituted at the time of the offense," this provision simply means that the defendant's belief need not reflect factual accuracy. Al-

though KRS 524.010 does not define "legal process," it requires more action than just reporting a crime, seeking assistance from the police or attempting to initiate a police investigation. See *Godby v. Commonwealth*, 187 S.W.3d 857, 859 n. 3 (Ky.App.2005) (raising the issue but declining to decide whether a police department's internal investigation process which had not yet resulted in any charges came within the definition of "legal process" under KRS 524.040).

The definition of "legal process" in other contexts provides support for Barefield's position that calling 911 as a matter of law is not an initiation of the legal process. In *Fulcher v. Commonwealth*, 149 S.W.3d 363, 377 (Ky.2004), the Kentucky Supreme Court defined the term "legal process" for purposes of KRS 505.020(1)(c) as including the issuance of an arrest warrant, the grand jury's indictment and the arraignment.[9] "[D]efinitions within the Penal Code are certainly persuasive authority in defining such terms even outside of the criminal law." *Shepherd v. Suburban Motor Freight, Inc.*, 780 S.W.2d 633, 634 (Ky. App.1989). The Supreme Court's definition of a term in one portion of the Penal Code should be equally persuasive authority in defining the same term in another portion of the Penal Code. Accordingly, we find the definition in *Fulcher* persuasive.

Additionally, other cases make it appear that "legal process" at minimum requires some significant step in a criminal action or civil suit, such as filings with a court which begin a case. See *Commonwealth ex rel. Morris v. Morris*, 984 S.W.2d 840, 841 (Ky.1998) (discussing 42 U.S.C. § 659(e)'s definition of "legal process" as including "any writ, order, summons, or other similar process in the

---

9. Footnote omitted.

nature of garnishment"); *Sprint Communications Co., L.P. v. Leggett,* 307 S.W.3d 109, 113–119 (Ky.2010) (discussing legal process in the context of the tort of abuse of process and equating legal process with the initiation of a legal action such as through the filing of a lawsuit or obtaining an indictment). *Id.* at *3–*4. I agree with this analysis. "The legal process" does not encompass an ongoing crime, and so Edmonds's victim was not a participant in "the legal process" when Edmonds chased after her, and he could not have reasonably believed her *to be* so. The legal process as contemplated under KRS 524.040 does not require an actual or imminent "official proceeding," but it does require some level of formality that is lacking from one's mere presence as a victim at the scene of an ongoing crime. It includes, for example, activities associated with the service of summonses, writs, subpoenas, and warrants, and other extra-judicial interactions with legal authorities such as a Terry-stop/frisk situation, a custodial interrogation, or voluntary interview of a witness or suspect, a traffic stop, administration of a breathalyzer test, and so on. The list is long and varied, but what is certain to me is that the occurrence of a crime is not what the General Assembly had in mind when it used the phrase, "the legal process."

There remains one other reason that a directed verdict on the charge of Intimidating a Participant in the Legal Process was necessary in this case. Under the circumstances as theorized by the Commonwealth in the trial court and on appeal, the only subsection of KRS 524.040 that might conceivably cover Edmonds's conduct is subsection (f). Under that subsection, in order to secure a conviction, the Commonwealth had to prove that Edmonds: "Hinder[ed], delay[ed], or prevent[ed] the communication to a law enforcement officer or judge of information

relating to the possible commission of an offense[ ]." It should be noted that the crime is *not* committed by *attempting* to hinder, delay, or prevent such communication; *actual* hindrance, delay, and prevention is required. The fact that the police arrived on the scene immediately proves beyond cavil that the communication to police relative to Edmonds's commission of a crime was not hindered, delayed, or prevented. Moreover, I fail to see how the victim's attempt to use a cell phone adds anything to the analysis because, under the Majority opinion, interfering with a victim who was just screaming for help must now be regarded as hindering the reporting of the crime to police.

Finally, it is worth noting that under my view, Edmonds will receive the punishment he deserves for the terrible crimes that he actually committed. But I respectfully submit that the penal system should not pile on an additional felony sentence for conduct that is criminalized only by the most expansive interpretation of the criminal code. Accordingly, I dissent. Cunningham and Scott, JJ., join.