**William Howard MORELAND, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000310–MR.**

Supreme Court of Kentucky.

Sept. 23, 2010.

Shannon Renee Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, James Coleman Shackelford, Assistant Attorney General, Office of Criminal Appeals Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

In the early morning hours of November 23, 2001, S.C. awoke and discovered a masked man standing by her bed. The intruder straddled her back, put a knife to her throat, bound her with electrical tape, and threatened her to "do as she was told." He punched her in the face and then turned S.C. onto her back. He performed oral sex and then raped her. During the attack, the intruder told S.C. that it was "pay back" time and threatened to hurt her daughter, who was staying overnight with her grandmother. He also threatened S.C.'s son, who was asleep in the other room, claiming that he had tied him up. After completing the rape, the intruder told S.C. that he needed to "get rid of the evidence" and poured bleach over her genital area. After the intruder left, S.C. went to the hospital where a rape kit was performed.

On the morning of January 23, 2002, C.C., a seventeen-year-old high school student, was getting ready for school. Her mother and sister had just left the house, and C.C. was expecting her ride to school shortly thereafter. She heard a noise in her mother's bedroom, went to investigate, and was confronted by a masked intruder. She turned to run, but was caught in the kitchen. The intruder held a knife to her throat and ordered her to remove her clothing. He first performed oral sex and then raped her. After completing the rape, he ordered C.C. into the bathtub to wash herself. He also told C.C. that he would kill her if she "talked." After the intruder left, C.C.'s school friend arrived and C.C. was taken to the hospital where a rape kit was performed.

In the early morning hours of March 1, 2004, K.P., then eight months pregnant, was asleep on her living room couch with her twenty-month-old daughter. She awoke to find an intruder standing over her, his face covered. He smacked her in the face and ordered her, at knifepoint, to put her daughter in her crib. K.P. returned to the living room and the intruder told her to remove the clothing from her lower body. He put a blanket over her head so she could not see him and, when she struggled to breathe under the blanket, he punched her in the face. The intruder performed oral sex and then raped her. During the attack, he told K.P. that he would kill her and her daughter if she went to the police. After he left, she went to a local hospital and was examined.

Four years later, Appellant's mother contacted police to obtain an E.P.O. against her son. She also told the authorities that she believed Appellant was responsible for the still unsolved sexual assaults. With her consent, police searched her home, which she and Appellant had

shared on and off for several years. The officers collected a toothbrush used by Appellant. DNA found on that toothbrush matched the male DNA profile of the semen found on all three rape victims. Based on that evidence, police obtained a search warrant to collect a buccal swab from Appellant. A DNA profile was established from the buccal swab that also matched the semen found on all three victims.

Appellant was tried before a McCracken County jury and convicted of three counts of first-degree burglary, three counts of first-degree rape, three counts of first-degree sodomy, three counts of intimidating a participant in a legal process, and two counts of tampering with physical evidence. The jury recommended twenty years for each of the burglary, rape and sodomy charges; and five years for each of the intimidating and tampering charges. The jury also recommended that the sentences run consecutively. Pursuant to KRS 532.110(1)(c), the trial court imposed a sentence of imprisonment for a term of seventy years. This appeal followed.

 Appellant first argues that he was entitled to a directed verdict of acquittal on all charges of intimidating a participant in a legal process. The argument is preserved for appellate review by counsel's motion.

As noted above, all three victims testified that, during and after the commission of the rapes, Appellant made verbal threats to the effect that he would kill them if they called police. Defense counsel argued that the threats were made to effectuate the sexual assaults and, therefore, could not sustain an independent intimidation charge. Further, defense counsel argued that there were no legal proceedings in existence at the time the threats were made and, therefore, the threats could not have been directed at a "participant in the legal process." We agree.

 After the attacks against S.C. and C.C., but before the attack against K.P., the General Assembly amended KRS 524.040. At the time the crimes were committed against S.C. and C.C., KRS 524.040(1)(a) provided, in pertinent part: "A person is guilty of intimidating a witness when, by use of physical force or a threat directed to *a witness or a person he believes may be called as a witness* in any official proceeding, he influences, or attempts to influence, the testimony of that person." (Emphasis added). KRS 524.040(1)(a) was amended in 2002. Accordingly, at the time of the crimes against K.P., the statute provided that a person is guilty of "intimidating a participant in the legal process when, by use of physical force or a threat directed to *a person he believes to be a participant in the legal process*, he or she influences, or attempts to influence the testimony, vote, decision, or opinion of that person." (Emphasis added).

By amending the language identifying the requisite belief the perpetrator must hold regarding the victim, the General Assembly essentially limited the class of potential victims. Prior to 2002, it was satisfactory that the victim be anyone who the accused believed *may be* called as a witness, regardless of whether actual proceedings had been initiated or the defendant's knowledge of those proceedings. The current version of the statute, in contrast, requires the accused threaten a person he believes *to be* a participant in the legal process. The use of the present tense "to be" indicates a requirement that the perpetrator believes the victim is participating in the legal process *at the time the offense is committed.*

The instructions delivered at trial failed to recognize this distinction with respect to the crimes against S.C. and C.C. Though the attacks on S.C. and C.C. occurred prior to the effective date of the 2002 amendments, the jury was instructed according to the amended version of KRS 524.040. That is, the jury was required to find that Appellant believed each victim *"to be* a participant in the legal process." The jury was instructed similarly with respect to K.P., though this was proper as the attack on K.P. occurred in 2004. However, neither party objected at trial to this error in the jury instructions.

Though the jury might reasonably have concluded that, at the time of the attacks, Appellant believed S.C. or C.C. may—at some point in the future—be called as a witness in an official proceeding, the jury was not so instructed. Under the instructions actually delivered, Appellant was entitled to a directed verdict. It is impossible to conclude that Appellant believed any of the three victims "to be a participant in the legal process" at the time of the offenses since no legal process yet existed, nor could Appellant have believed that any legal process had been initiated.

As such, the evidence presented at trial was insufficient to "induce a reasonable juror to believe beyond a reasonable doubt that [Appellant] was guilty." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (internal citations omitted). The trial court erred in failing to direct a verdict of acquittal on all three charges of intimidating a participant in the legal process. The convictions must be vacated.

■ Appellant next argues that the trial court improperly refused to strike two jurors for cause. The decision whether to excuse a juror for cause lies within the sound discretion of the trial court, who is in the best position to evaluate the nature and sincerity of the potential juror's re-

sponses. *Stopher v. Commonwealth,* 57 S.W.3d 787, 796 (Ky.2001). The established test for determining whether a juror should be stricken for cause is whether "the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict." *Thompson v. Commonwealth,* 147 S.W.3d 22, 51 (Ky.2004) (quoting *Mabe v. Commonwealth,* 884 S.W.2d 668, 671 (Ky. 1994)). Appellant contends that jurors R.G. and G.K. should have been excused because they had read a newspaper article about the case.

■ Both jurors acknowledged that they had read an article concerning Appellant's case. Of reading the story, R.G. said she only remembered that the case involved rape charges, and that the trial was expected to last three days. She stated that she did not form any opinion based on the article. She was instructed not to re-read the article and to alert the trial court if she remembered further details.

■ Juror G.K. remembered from the article that the case involved some burglary and sex charges, and some mention of DNA evidence. While acknowledging that he had read the entire article, G.K. also stated that he did not remember much because he had "skimmed it over in a hurry." The trial court again instructed the juror to raise his hand if anything else jogged his memory of the article.

■ There is no indication that the trial court abused its discretion with respect to either juror. Exposure to pretrial publicity does not automatically disqualify a prospective juror. *Maxie v. Commonwealth,* 82 S.W.3d 860, 862 (Ky.2002). Based on the totality of circumstances surrounding the responses of both jurors, we find no error in the trial court's refusal to strike them for cause. *See Fugett v. Commonwealth,* 250 S.W.3d 604, 613 (Ky.2008).

Appellant's final allegation of error is that he was entitled to a severance of the charges against him. RCr 6.18 allows for the joinder of offenses in separate counts of an indictment provided that the offenses are of "the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." Joinder is improper if the defendant or the Commonwealth will be unduly prejudiced. RCr 9.16. Prejudice in this context has been described as an "unreasonable" disadvantage. *Romans v. Commonwealth,* 547 S.W.2d 128, 131 (Ky.1977). A significant factor in identifying prejudice due to joinder is the extent to which evidence of one offense would be admissible at trial of the other offenses. *Rearick v. Commonwealth,* 858 S.W.2d 185, 187 (Ky.1993). The trial court's decision with respect to joinder is reviewed for abuse of discretion. *Cannon v. Commonwealth,* 777 S.W.2d 591, 597 (Ky.1989).

It is hard to conceive of a set of crimes with more striking similarities than the assaults on S.C., C.C., and K.P. Each occurred in the early morning hours against a woman who was the lone adult in the home. Each woman lived in a mobile home within the vicinity of Appellant's mother—two in the same mobile home park. Appellant was a stranger to each victim. In each attack, Appellant wore a mask and used a knife. He orally sodomized each victim before raping her. He used physical force and threatened to kill each victim. He wore gloves during two of the attacks. He made an attempt to destroy evidence during two of the attacks. Appellant's semen and DNA were collected from each victim.

The facts of each assault were sufficiently similar to establish a modus operandi. *See Billings v. Commonwealth,* 843 S.W.2d 890, 892 (Ky.1992) (quoting *Adcock v. Commonwealth,* 702 S.W.2d 440, 443 (Ky.1986)):

> In every case in which evidence of other crimes is sought to be introduced to establish a pattern or scheme, the real question is whether the method of the commission of the other crime or crimes is so similar and so unique as to indicate a reasonable probability that the crimes were committed by the same person.

The trial court did not err in refusing to sever the charges.

The judgment of the McCracken Circuit Court is affirmed in part and vacated in part. Appellant's convictions of rape, sodomy, burglary, and tampering with physical evidence are affirmed. Appellant's convictions of intimidating a participant in the legal process are vacated.

All sitting. All concur.