**Paul S. JACKSON II, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2013–CA–001890–MR**

Court of Appeals of Kentucky.

RENDERED: APRIL 15, 2016; 10:00 A.M.

BRIEFS FOR APPELLANT: Shannon Dupree, Assistant Public Advocate, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, John Paul Varo, Assistant Attorney General, Frankfort, Kentucky

BEFORE: J. LAMBERT; MAZE, AND TAYLOR, JUDGES.

*OPINION*

LAMBERT, J., JUDGE:

Paul S. Jackson II has directly appealed from the judgment of the Jefferson Circuit Court entered following a jury trial convicting him of second-degree criminal mischief, intimidating a witness in the legal process, fourth-degree assault, and for being a second-degree persistent felony offender (PFO II). For these offenses, Jackson was sentenced to an enhanced sentence of five years pursuant to the jury's recommendation. Finding no error, we affirm the judgment on appeal.

In May 2012, a Jefferson County grand jury returned a seven-count indictment against Jackson, charging him with one count each of second-degree assault, first-degree wanton endangerment, first-degree criminal mischief, and fourth-degree assault, as well as two counts of intimidating a participant in the legal process. In addition, Jackson was charged with a PFO II status offense. These charges arose from an altercation with his pregnant girlfriend, Shaina DeMoss, on March 22, 2012, and

from Jackson's attempts to prevent her from calling the police. Jackson entered a plea of not guilty, and a jury trial was scheduled.

The jury trial began on January 16, 2013. Twenty-one-year-old Shaina DeMoss was the first witness to testify for the Commonwealth. She and Jackson met in 2010 while they were both in an Alcoholics Anonymous program and had an on-again, off-again relationship. Shaina and Jackson had gotten back together just prior to the events of March 22, 2012, and she was seven months' pregnant with his child at that time.[1] Shaina testified extensively about the altercation with Jackson. Shaina claimed that Jackson hit her with her vehicle after she tried to block him from leaving, that he threw a beer bottle at her, that he grabbed her and threw her into a wall in the hallway of the apartment complex, causing her to land on her knee, and that he attempted to stop her from calling the police twice by grabbing a neighbor's phone out of her hand and slamming it against the wall. She went on to testify that Jackson threw decorative boulders into her vehicle's windows before he left in his own vehicle. When the police responded, Shaina told them that she was alright and did not want to make a report. She called the police back after she realized that Jackson was not planning to return. She made a full report to one of the responding officers while another officer took photographs. Shaina was checked out at the police station, but she did not receive any medical treatment. The injury to her knee was the extent of her injuries. Shaina's father met her at the police station, and he took her back to his house that night. She was interviewed by a police detective one week later at the Clarksville Police Station, where her father worked as a detective.

Joel DeMoss, Shaina's father, works as a narcotics detective with the Clarksville, Indiana, Police Department. He received a telephone call from Shaina between 10:00 pm and 10:30 pm on March 22, 2012. She was crying and hysterical, and she told him that Jackson had hit her with a car and that she was at the police station. He went to pick her up. He did not believe she was under the influence of anything because her eyes were not dilated. Mr. DeMoss made arrangements for Shaina to be interviewed by a detective in a private area at his police station.

Louisville Metro Police Officer Jason DeWitt testified that he was called twice to Jackson's residence on the evening of March 22, 2012, due to a domestic incident and damage to a car. He said that Shaina did not want to make a report during the initial call, and the officers left without completing a report. He returned about an hour later. He was the first officer there, and he got as much information as he could to start the domestic violence report. Another officer took photographs of the scene. Officer DeWitt did not think Shaina was under the influence of anything but was very upset. He did not recall seeing a glass bottle at the scene.

Detective Keith Heselschwert of the Louisville Metro Police Department's domestic violence unit interviewed Shaina along with another officer about a week after the altercation. Shaina told the detectives that she had been driving Jackson around that day because he had been drinking. Regarding her cellphone, Shaina told him that Jackson had snatched her phone from her as she was calling the police and threw it against the wall in the kitchen. She then went to the neighbor's apartment to use her phone. Jackson snatched that phone from Shaina and

1. Shaina gave birth to a baby girl on May 9, 2012.

threw it against the wall. A portion of the recorded interview was played for the jury. Detective Heselschwert did not speak with any of the neighbors.

Following this testimony, the Commonwealth closed its case. Jackson moved for a directed verdict on the second-degree assault charge regarding Shaina being hit by the car. The Commonwealth did not oppose the motion, which the court granted. Jackson's counsel then asked for lesser-included instructions. The prosecutor stated that she did not believe that Jackson was entitled to a directed verdict on the rest of the charges based on the testimony. However, defense counsel moved for a directed verdict on one of the two intimidating a participant charges, which she argued were both based upon the neighbor's phone. The court denied this motion, ruling that the jury should decide whether Jackson grabbed the neighbor's phone two times.

Jackson opted to testify in his own defense, and his version of the events of March 22, 2012, differed from Shaina's version. After running some errands, he returned home to find that Shaina was upset because she had been waiting for him for an hour and a half. She immediately started yelling at him and asked him about his relationship with another woman. Because he did not want to discuss this, he told her he was going to the store. She said no and that she wanted to talk. Shaina took his keys, so Jackson took her keys and drove her car to the gas station. When he returned to the apartment, Shaina had packed her belongings and asked him for the $400.00 she had loaned him. He told her she could not have her money back, which made her angrier. She pulled the coffee pot off of the counter and broke the stereo, and he told her to get out. After she grabbed a knife, which Jackson said she used to slash his couch, he went to the bedroom to get his money out of the safe.

When he came out of the bedroom, Jackson told Shaina that he was leaving, and she said that if he left she would call the police. Shaina was in the hallway with both sets of keys, and he went to get the keys back. He thought she dropped the phone or it fell when he jerked the keys away. Jackson testified that it was not his intention to stop Shaina from calling police. He took the keys and walked out the front door of the building. Because he was mad about his apartment being trashed, he threw a decorative boulder through Shaina's car window. Jackson then got in his car. Shaina stood behind the car screaming at him to stop and talk with her. He put his head out of the window and told her he was leaving and to get out from behind the car. Jackson left, but denied that he hit her with the car. He did not return to his apartment that night. Shaina called him for the next thirty minutes. He answered her first call and declined the rest of her calls. He went to stay at another person's house that night.

Jackson returned to his apartment the next day and took photographs of the damage to his possessions and the unit. Photographs showed a smashed television, his dresser drawers on the floor, his bed pulled apart, and coffee on the floor in the kitchen. He also testified that his clothes were in a pile in the closet covered with bleach. A towel had been placed in the bathtub with the water running, causing a flood in the next apartment. Jackson had to pay to clean and repair his unit, including pulling up the carpet and filling in the holes. He paid a $1,000.00 lease termination fee as well. He denied being under the influence of anything that day, but he testified that Shaina was slurring, overly irrational, and acting erratically. He de-

nied that he had ever hit or restrained Shaina, and he testified that he had never choked her, grabbed her, shaken her, thrown her into a wall, or thrown a beer bottle at her. He denied causing any injury to her knee.

At the conclusion of Jackson's defense, counsel moved for a directed verdict, which was denied. Both the Commonwealth and Jackson called rebuttal witnesses. The Commonwealth called Elizabeth Cowley, who lived across the hall from Jackson. She testified that Shaina knocked at her door and asked to use her phone. After getting her house phone, Ms. Cowley stepped into the hallway and gave the phone to her. Jackson came through the front door, grabbed Shaina by the throat, threw her against the wall, took the phone from her, and threw it at the wall, causing it to break into pieces. Ms. Cowley gathered up the pieces of the phone and put it back together. She went back into her apartment. The 911 dispatcher called back on her house phone, and Ms. Cowley went to the hallway to give the cell phone back to Shaina. Jackson was no longer in the hallway, but Shaina was on the floor lying on her back. Ms. Cowley helped her up and handed her the phone. Shaina talked to 911. Jackson apologized to Ms. Cowley about the phone and said that he was mad because Shaina had damaged thousands of dollars of his property.

After the testimony was completed, the court instructed the jury, and the parties made their closing arguments. Following deliberations, the jury found Jackson guilty of second-degree criminal mischief, one count of intimidating a participant in the legal process, and fourth-degree assault. The jury found him not guilty of first- or second-degree wanton endangerment, first-degree criminal mischief, and

one count of intimidating a participant in the legal process. Following the penalty phase, the jury fixed his punishment on the intimidating a participant offense at one year in prison. The jury also found him guilty of the PFO II charge and enhanced his sentence to five years. Finally, the jury assessed a $500.00 fine for the criminal mischief conviction and recommended a ninety-day jail sentence for the assault conviction. The court entered a judgment memorializing the jury's verdict and sentence, and scheduled a sentencing hearing for the following month.

Prior to the sentencing hearing, Jackson filed a motion for a new trial pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.02. Jackson argued that the jury had not been properly instructed on the offense of criminal attempt to intimidate a participant charge and that it could have found him guilty of this lesser-included offense. Following a sentencing hearing on February 21, 2013, where the parties argued the merits of the motion, the trial court denied Jackson's motion for a new trial, noting that the court had not been asked to instruct the jury in that manner, and it therefore entered a judgment of conviction and sentence in accordance with the jury's verdict. The sentences were ordered to run concurrently for a total of five years. This appeal now follows.[2]

On appeal, Jackson contends that the trial court erred in failing to grant a directed verdict on the charge of intimidating a participant in the legal process because the Commonwealth failed to establish that Jackson believed Shaina was a participant in the legal process when he grabbed the neighbor's phone and hit it on the wall or that he had hindered or delayed her communication.

**2.** This Court granted Jackson's motion for a belated appeal on June 3, 2014.

The Supreme Court of Kentucky set forth the directed verdict rule as well as the appellate court's standard of review in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky.1991):

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Id.* at 187, citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky.1983). *See also Wilburn v. Commonwealth*, 312 S.W.3d 321, 323 (Ky.2010); *Hedges v. Commonwealth*, 937 S.W.2d 703, 707 (Ky.1996).

 In the present appeal, the Commonwealth contends that the issue Jackson raises in his brief was not properly preserved for review. At the close of the Commonwealth's case, Jackson's counsel only moved for a directed verdict on the second-degree assault charge, which was granted, and on one of the intimidating a participant charges. The basis for the second motion was related to the lack of evidence that Jackson had thrown Shaina's cellphone. That motion was denied based upon Shaina's testimony that he had grabbed the neighbor's phone twice. Defense counsel did not move for a directed verdict on any of the other charges or on any other basis, stating that she (counsel) was uncertain whether Jackson was entitled to a directed verdict on the remaining charges. At the close of the defense's case-in-chief, counsel only broadly renewed the motion for directed verdict, but she did not specifically argue about this particular charge. Furthermore, Jackson's counsel did not renew the motion for directed verdict at the close of the Commonwealth's rebuttal.

It is black-letter law that, in order to preserve an insufficiency-of-the-evidence allegation for appellate review, "[a] defendant must renew his motion for a directed verdict, thus allowing the trial court the opportunity to pass on the issue in light of all the evidence[.]" In other words, a motion for directed verdict made after the close of the Commonwealth's case-in-chief, but not renewed at the close of all evidence—i.e., after the defense presents its evidence (if it does so) or after the Commonwealth's rebuttal evidence—is insufficient to preserve an error based upon insufficiency of the evidence. [Footnotes omitted.]

*Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky.2003), citing *Baker v. Commonwealth*, 973 S.W.2d 54, 55 (Ky. 1998) (affirming the rule announced in *Kimbrough v. Commonwealth*, 550 S.W.2d 525, 529 (Ky.1977)). Because Jackson failed to renew the motion for directed verdict or to argue the specific issue raised in his appellate brief before the trial court, we agree with the Commonwealth that this issue has not been properly preserved for our review.

Jackson concedes in his brief that the issue was only partially preserved and requests that this Court review this issue for palpable error pursuant to RCr 10.26. In *Schoenbachler, supra*, the Supreme Court

explained palpable error review as follows: "A palpable error is one of that 'affects the substantial rights of a party' and will result in 'manifest injustice' if not considered by the court, and '[w]hat it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial.'" *Id.* at 836, citing RCr 10.26 and *Abernathy v. Commonwealth*, 439 S.W.2d 949, 952 (Ky.1969), *overruled in part on other grounds by Blake v. Commonwealth*, 646 S.W.2d 718 (Ky.1983) (footnotes omitted). Accordingly, we shall review this issue for palpable error.

Kentucky Revised Statutes (KRS) 524.040 codifies the felony crime of intimidating a participant in the legal process, which provides in relevant part as follows:

(1) A person is guilty of intimidating a participant in the legal process when, by use of physical force or a threat directed to a person he believes to be a participant in the legal process, he or she:

. . . .

(f) Hinders, delays, or prevents the communication to a law enforcement officer or judge of information relating to the possible commission of an offense or a violation of conditions of probation, parole or release pending judicial proceedings.

(2) For purposes of this section:

(a) An official proceeding need not be pending or about to be instituted at the time of the offense; and

. . . .

(4) In order for a person to be convicted of a violation of this section, the act against a participant in the legal process or the immediate family of a participant in the legal process shall be related to the performance of a duty or role played by the participant in the legal process.

First, Jackson contends that under the law at the time of the offense and trial, he could not have known that Shaina was a participant in a legal process when he broke the neighbor's phone, citing the Supreme Court of Kentucky's opinion in *Moreland v. Commonwealth*, 322 S.W.3d 66 (Ky.2010). In *Moreland,* the defendant verbally threatened his rape victims that he would kill them if they contacted the police. The Court held that these statements could not support a charge under KRS 524.040:

Under the instructions actually delivered, Appellant was entitled to a directed verdict. It is impossible to conclude that Appellant believed any of the three victims "to be a participant in the legal process" at the time of the offenses since no legal process yet existed, nor could Appellant have believed that any legal process had been initiated.

*Id.* at 70. This Court reached the same conclusion in the unpublished opinion of *Barefield v. Commonwealth*, No. 2011–CA–001851–MR, 2013 WL 2450529 at *3–4 (Ky.App. June 7, 2013), citing *Moreland* and the rule of lenity as to the definition of "legal process" and "whether a particular act was intended to be punishable as a crime."

■ However, less than four years later, the Supreme Court reversed its decision in *Moreland* in the opinion of *Edmonds v. Commonwealth*, 433 S.W.3d 309 (Ky.2014). In *Edmonds,* the Court rejected the defendant's argument "that the Commonwealth failed to present sufficient evidence that he believed J.H. to be 'a participant in the legal process' when he chased after her with a gun." *Id.* at 317. After detailing its analysis in *Moreland,* including the 2002 amendments to KRS 524.040, the Court held:

But, because of the way the issue was framed to the Court, we failed to consider the full text of the amendments, which changed both KRS 524.040 and other statutes in the chapter, including the definitional provision.

KRS 524.040(2) specifically anticipates that the crime can occur before specific legal proceedings have begun. KRS 524.040(2)(a) states that "[f]or purposes of this section . . . [a]n official proceeding need not be pending or about to be instituted at the time of the offense." This is directly at odds with our holding in *Moreland*, 322 S.W.3d 66 at 70. No doubt, this subsection was included in the statute because the intuitive reading of the rest of the statute suggests the victim must already be involved in the legal system. In *Moreland*, we mistakenly relied only on an intuitive reading of the statute. The net effect of subsection (2) is to clarify that under this version of the statute, there does not have to be an existing legal proceeding in order for the statute to apply. As a matter of policy, if the legal process *could* be invoked, and a defendant intends to prevent a victim from participating in the legal process, then this statute can apply.

Our mistake in *Moreland* was in part in equating "the legal process" with an individualized case or "official proceeding." But, as KRS 524.040(2)(a) shows, the statute is not about a participant in a specific legal proceeding. Instead, it is about a "participant in *the* legal process," KRS 524.040(1) (emphasis added), meaning the entire legal system. Indeed, this is supported by the fact that "participant in the legal process" is defined in part to include "any judge, prosecutor, [or] attorney defending a criminal case." KRS 524.010(3). Those persons, as judicial officers or licensed attorneys (and thus officers of the court)

are always participants in the legal process, by nature of their roles. Of course, the statute refers at times to "official proceedings," referring to an individual case, as it does in KRS 524.040(2)(a), but it does so to show that a specific case does not yet have to exist for the crime of intimidating a participant in the legal process to occur.

That this is the correct reading of the statute is definitively shown by other amendments to the statutory scheme. . . .

These added definitions further exclude the intuitive reading of the statute because they suggest that a person is a "participant in the legal process" because of the participant's role in the overall legal system (or, as with witnesses, the participant's potential role), not because of their participation in a specific legal action. . . .

. . . .

Thus, by simply substituting the definitions in question, "participant in the legal process" becomes "witness." And "witness," in turn becomes "any person who may be called to testify in an official proceeding." In other words, when the purported victim is a witness, including, by definition, a potential witness, the statute works in the same way as it did before the 2002 amendments. The amendment was thus intended to expand the scope of the former witness-intimidation statute to include other participants in the legal system. It was never intended to narrow the reach of the statute.

. . . .

Because "witness" is defined to include a person who "may be called" as a witness, and that definition is included in the definition of "participant in the legal process," KRS 524.010(3), a person may

still be guilty of an offense under KRS 524.040 when the victim is a person who may be called as a witness in an official proceeding in the future, even if the official proceeding has not yet begun or is not about to begin pursuant to KRS 524.040(2). To the extent that *Moreland* holds otherwise, it is hereby overruled.

*Edmonds,* 433 S.W.3d at 319–21 (footnote omitted). Based upon *Edmonds,* Jackson's actions certainly placed him in the purview of the statute as Shaina was a participant in the legal process when she attempted to call the police on the neighbor's phone to report that she had been the victim of a crime.

▪ Jackson argues that because *Edmonds* had not been rendered until after he was tried, the holding in that case should not apply against him. However, the Commonwealth points out that Jackson's conviction is not yet final and therefore the holding in *Edmonds* should apply to him, citing *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) ("We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). We agree with the Commonwealth and hold that because Jackson's conviction is not yet final, the Supreme Court's holding in *Edmonds* controls in this case. Therefore, we find no error, or palpable error, on this issue.

In addition, Jackson contends that the Commonwealth failed to establish that he had hindered or delayed Shaina's attempt to contact law enforcement. Again, we disagree. We have already held that Shaina, as the victim, was a participant in the legal process when she called 911 to report Jackson's actions. The evidence introduced by the Commonwealth on this charge established that Jackson used physical force to remove the neighbor's phone from Shaina's hand and broke it by hitting it against the wall in the hallway. While the neighbor testified that she was able to put the phone back together and use it again, it was well within the jury's fact-finding role to determine whether this hindered or delayed Shaina's ability to communicate with the police in order to report the incident. It was not clearly unreasonable that the jury could find Jackson guilty. Therefore, we find no error or palpable error and hold that Jackson was not entitled to a directed verdict on the charge of intimidating a participant in the legal process.

For the foregoing reasons, the final judgment and sentence of the Jefferson Circuit Court is affirmed.

ALL CONCUR.