MODIFIED DECEMBER 13, 2018
RENDERED: AUGUST 16, 2018
NOT TO BE PUBLISHED

# $\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$



### 2017-SC-000303-MR

DATE 12/13/18 Kim Redmon, DC

AMANDA BOWEN        APPELLANT

V.        ON APPEAL FROM JOHNSON CIRCUIT COURT
HONORABLE JOHN DAVID PRESTON, JUDGE
NO. 16-CR-00205

COMMONWEALTH OF KENTUCKY        APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A circuit court jury convicted Amanda Bowen of three counts of complicity to murder, two counts of complicity to first-degree robbery, and one count of complicity to tampering with physical evidence. She received a life sentence without the possibility of parole on each of the complicity-to-murder counts, twenty years on each robbery count, and five years on the tampering charge. Bowen now appeals the resulting judgment as a matter of right,[1] raising seven allegations of error. Finding no reversible error, we affirm the judgment.

---

[1] Ky. Const. § 110(2)(b).

# I. ANALYSIS.

## A. The trial court did not commit reversible error in denying Bowen's motion to strike a potential juror for cause.

Bowen first alleges that the trial court committed reversible error by denying her motion to remove a potential juror for cause. Because of the trial court's denial, Bowen used a peremptory strike to remove prospective juror, indicating on the strike sheet that she would have used the peremptory strike on a different person if the trial court would have granted her motion. Preservation for appellate review of this alleged error is undisputed.

Kentucky Rule of Criminal Procedure ("RCr") 9.36(1) identifies when a trial court should excuse a prospective juror for cause: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." "Ultimately, '[i]t is the totality of all the circumstances...and the prospective juror's responses that must inform the trial court's ruling.'"[2] "A determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination."[3] "Deference must be paid to the trial judge who sees and hears the juror."[4]

---

[2] *Little v. Commonwealth*, 422 S.W.3d 238, 242 (Ky. 2013).

[3] *Commonwealth v. Lewis*, 903 S.W.2d 524, 527 (Ky. 1995) (citing *Simmons v. Commonwealth*, 746 S.W.2d 393, 396 (Ky. 1988)); *Caldwell v. Commonwealth*, 634 S.W.2d 405, 407 (Ky. 1982); *Hicks v. Commonwealth*, 805 S.W.2d 144, 147 (Ky. 1990)).

[4] *Lewis*, 903 S.W.2d at 527 (citing *Wainwright v. Witt*, 469 U.S. 412, 425-26 (1985)).

During voir dire, the prospective juror, who Bowen alleges should have been excused for cause, was asked if he had ever "heard anything on the radio, seen anything on TV, read anything in the newspaper about this case or the Jack Smith[5] case." The prospective juror replied that he had heard a bit about the case and what had happened, but that he did not really know the details. The trial court then followed up and asked if the prospective juror had heard or read anything about the case. The prospective juror replied, "Actually, I just turned the radio on at lunch, I heard the guy, the other person, pled guilty on the radio, and that was it." The trial court then asked whether "the fact that [he] heard that the other person pled guilty, would that make it difficult for [him] to try this defendant fairly." The prospective juror responded, "No, sir." When the trial court concluded its questioning, defense counsel asked, "Having heard that he's already pled guilty, would that give you an opinion as to whether she was also guilty?" The prospective juror responded, "I don't think so, no."

Bowen argues that the trial court abused its discretion by failing to excuse this prospective juror for cause because of his pretrial knowledge of Bowen's co-indictee's plea. But, "[e]xposure to pretrial publicity does not automatically disqualify a prospective juror."[6] And, "only the '[blatant] use [of] the conviction [of a co-indictee] as substantive evidence of guilt of the indictee

---

[5] Jack Smith pleaded guilty to the crimes in which Bowen was charged as being complicit.

[6] *Moreland v. Commonwealth*, 322 S.W.3d 66, 70 (Ky. 2010) (citing *Maxie v. Commonwealth*, 82 S.W.3d 860, 862 (Ky. 2002) (overruled on other grounds by *Edmonds v. Commonwealth*, 433 S.W.3d 309 (Ky. 2014)).

now on trial" is prohibited.[7] In other words, the simple knowledge on the part of a prospective juror that a co-indictee pleaded guilty does not mandate automatic disqualification of the prospective juror by the trial court, nor does it warrant a finding by this Court of reversible error.[8]

We cannot find reversible error merely in the suggestion that the trial court's decision to allow the prospective juror to remain in the venire was unreasonable because of the prospective juror's pretrial knowledge of this case, specifically, knowledge of Bowen's co-indictee's guilty plea, a disclosure prompted by neither party. The prospective juror twice denied that his pretrial knowledge of the case would affect his ability to render a fair and impartial verdict, and nothing in the record suggests any reason to doubt his honesty and candor, nor his fair and impartial approach to his jury service.

We also do not find the prospective juror's answer, "I don't think so, no," to be equivocal, as Bowen has suggested. The prospective juror did not hesitate in his answer and showed no suspicious body language, leading us to believe that the totality of the statement was one made in the normal course of conversation. On these facts, we cannot say that the trial court unreasonably believed the prospective juror was not disqualified from serving on this jury.

### B. Bowen was not unduly prejudiced by the introduction of photographs depicting the bodies of the victims.

Bowen alleges that the trial court committed reversible error by failing to exclude from evidence three photographs as being unduly prejudicial and

---

[7] *Mayse v. Commonwealth*, 422 S.W.3d 223, 226 (Ky. 2013) (emphasis and additions in original) (quoting *Tipton v. Commonwealth*, 640 S.W.2d 818 (Ky. 1982)).

[8] *Mayse*, 422 S.W.3d at 226.

4

inflammatory. The parties agree that Bowen properly preserved this issue for appellate review.

Through a confession, Bowen described her version of what happened that led to the charges against her in this case. Bowen and her co-indictee went to the house of one of the victims, looking for prescription drugs. Upon arriving at the house, Bowen and her co-indictee encountered one of the victims. Bowen admitted to stabbing that victim in the neck. Bowen remembers her co-indictee then shooting that victim and hearing two or three gunshots in a different room where the bodies of two additional victims were eventually found. Bowen and her co-indictee then took money and prescription drugs from one of the victims and left the house. Bowen's co-indictee later returned to the house and set it on fire with the bodies of the victims still inside. Testimony from the medical examiner revealed that the bodies of all victims showed stab wounds.

At trial, the Commonwealth introduced three photographs of the scene of the crime after the arson. Bowen argues that the trial court should have excluded these photographs from evidence per Kentucky Rules of Evidence ("KRE") 403 because they unduly prejudiced Bowen by inflaming the jury's passion. A trial court's evidentiary rulings are reviewed under the abuse-of-discretion standard.[9] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[10]

---

[9] *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky. 2000).

[10] *Id.* at 581 (citing *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999)).

KRE 402 provides the general rule for the admission of evidence: "All relevant evidence is admissible." KRE 401 defines *relevant evidence* as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "This standard is powerfully inclusionary and is met upon a showing of minimal probativeness."[11] "Evidence is relevant ... if it has *any tendency* to increase or decrease the probability of a 'proposition that is of consequence to the determination of the action.'"[12]

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice" under KRE 403.[13] "What is contemplated as 'unfairly' or 'unduly' prejudicial is evidence that is harmful beyond its natural probative force: 'Evidence is unfairly prejudicial only if ... it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case.""'[14]

We cannot say that the trial court abused its discretion by allowing the photos into evidence. After reviewing the photographs, we fail to see how any of them can be characterized as "gruesome," "inflammatory," or "unduly prejudicial." The first photograph appears to merely show a burnt room, but

---

[11] *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015) (citing Lawson, *The Kentucky Evidence Law Handbook* § 2.05 (LexisNexis Matthew Bender) ("The inclusionary thrust of the law of evidence is powerful, unmistakable, and undeniable, one that strongly tilts outcomes toward admission of evidence rather than exclusion.")).

[12] Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 2.05[2][6] (5th ed. 2013)(emphasis added).

[13] KRE 403.

[14] Lawson, *supra* at § 2.10[4][b] (internal citations omitted).

was accompanied by testimony regarding the locations of two burnt bodies therein. Without this further description in the testimony, the bodies are indistinguishable from their charred surroundings. The second photograph shows another burnt room with what appears to be faint skeletal remains of one of the victims that Bowen admitted stabbing. The third photograph shows the body of one of the victims with multiple stab wounds. These photographs pale in comparison to the photographs at issue in *Funk v. Commonwealth*, which depicted "close-ups of various rotting and decomposed portions of the victim's head, neck and thigh; massive maggot infestation; the area where ... flesh had been torn away from the thigh by dogs" and were termed "repulsive and extremely offensive by any standard" by this Court.[15]

Notably, the Court in *Funk* only found undue prejudice in the photos at issue in that case *not because of the images they showed*, but because they were depictions of "mutilation, decomposition and decay *not directly related to the crime*."[16] Recall that Bowen was charged with complicity to murder and first-degree robbery. Bowen admitted stabbing one of the victims. One witness testified all victims had stab wounds of some sort. The second photo provides visual evidence of the skeletal remains of the victim that Bowen admitted stabbing. The third photo provides visual evidence of another victim stabbed multiple times. The first photo, in conjunction with witness testimony, evidences the location of the bodies of two of the victims who one witness testified were both stabbed.

---

[15] *Funk v. Commonwealth*, 842 S.W.2d 476, 478 (Ky. 1992).

[16] *Id.* at 479 (emphasis added).

7

All three photos derive their probative value from their various depictions of the scene of the crime and the victims and speak to the satisfaction of the elements of two of the crimes with which Bowen was charged. Any prejudice that may be associated with these photos cannot outweigh, much less substantially outweigh, this probative value.

"The general rule is that a photograph, otherwise admissible, does not become inadmissible because it is gruesome and the crime heinous."[17] There exists a "primary exception to [this] rule, i.e. 'when the condition of the body has been materially altered by mutilation, autopsy, decomposition or other extraneous causes, not related to the commission of the crime, so that the pictures tend to arouse passion and appall the viewer.'"[18]

The first photo depicts the skeletal remains of two victims, as the testimony indicates. However, after reviewing the image, it is difficult to discern the presence of those bodies and it does not 'tend to arouse passion and appall the viewer.' *Id.* The third photo does not show a "materially altered" burned body, but rather shows stab wounds. The second photo depicts the skeletal remains of one of the victims, clearly because of the arson. But this photo depicts the remains of one of the victims whom Bowen admitted stabbing. We cannot say that the trial court unreasonably believed that the probative value of this photo, showing the skeleton of a victim whom Bowen admitted stabbing,

---

[17] *Barnett v. Commonwealth*, 979 S.W.2d 98, 102 (Ky. 1998); *Funk*, 842 S.W.2d at 479; *see Cherry v. Commonwealth*, 458 S.W.3d 787, 799 (Ky. 2015) ("Graphic photographs, like all other evidence, are generally admissible even if prejudicial, if they are relevant.").

[18] *Adkins v. Commonwealth*, 96 S.W.3d 779, 794-95 (Ky. 2003) (quoting *Clark v. Commonwealth*, 833 S.W.2d 793, 794 (Ky. 1991)).

was not substantially outweighed by any allegation of undue prejudice that may be associated with it. Additionally, as stated, all three photos evidence, at least somewhat, the commission of some of the crimes with which Bowen was charged.

For these reasons, the trial court did not abuse its discretion in admitting the challenged photographs.

### C. The trial court did not commit reversible error in allowing the Commonwealth to introduce into evidence the third recorded interrogation of Bowen.

Bowen next argues that the trial court committed reversible error by allowing the Commonwealth to introduce into evidence a recorded interview between Bowen and the police. That this issue is preserved is undisputed.

On the day that the police discovered the bodies of the victims, they interviewed Bowen three times. At trial, the court overruled Bowen's objection to the Commonwealth's introduction into evidence of the recording of the third interview; and that objection gives rise to this issue on appeal. Both Bowen and the Commonwealth agree to some degree that Bowen appears to become increasingly intoxicated during this interview. Bowen argues that the trial court should have suppressed this third interview because her intoxication, which, when paired with the police interrogation methods and Bowen's alleged intellectual disability, rendered her statements during the interview constitutionally inadmissible.

"On appellate review of a trial court's denial of a motion to suppress, we apply [a] two-step process ... "[19] "First, we review the trial court's findings of

---

[19] *Smith v. Commonwealth,* 410 S.W.3d 160, 164 (Ky. 2013).

9

fact under a clearly erroneous standard."[20] "Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence."[21] "We then 'conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision [was] correct as a matter of law.'"[22]

"Generally speaking, no constitutional provision protects a drunken defendant from confession to [her] crimes."[23] "The fact that a person is intoxicated does not necessarily disable [her] from comprehending the intent of [her] admissions or from giving a true account of the occurrences to which [she has] reference[d]."[24]

"However, there are two circumstances in which a defendant's level of intoxication might play a role in the suppression decision."[25] "First, intoxication may become relevant because a 'lesser quantum' of police coercion is needed to overcome the will of an intoxicated defendant."[26] "Thus, trial courts must consider a defendant's level of intoxication when considering whether police coercion has overborne a defendant's will so as to render the confession involuntary for purposes of the Due Process Clause."[27] "Second, a

---

[20] *Id.* (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)).

[21] *Smith*, 410 S.W.3d at 164 (citing RCr 9.78); *Canler v. Commonwealth*, 870 S.W.2d 219, 221 (Ky. 1994)).

[22] *Smith*, 410 S.W.3d at 164 (quoting *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002) (citing *Payton v. Commonwealth*, 327 S.W.3d 468, 471-72 (Ky. 2010))).

[23] *Smith*, 410 S.W.3d at 164.

[24] *Peters v. Commonwealth*, 403 S.W.2d 686, 689 (Ky. 1966).

[25] *Smith*, 410 S.W.3d at 164.

[26] *Id.* (internal citations omitted).

[27] *Id.*

10

confession may be suppressed when the defendant was 'intoxicated to the degree of mania' or was hallucinating, functionally insane, or otherwise 'unable to understand the meaning of his statements.'"[28] "Under those circumstances, suppression may be warranted not because the confession was 'coerced' but because it is unreliable."[29]

In this case, as in *Smith*, neither of the above-stated exceptions applies. First, Bowen offered no evidence of coercive influence by the police. Bowen has not suggested that the police forced her into an interview. The interviewing officer read Bowen her *Miranda* rights[30] before the interview started, and she agreed to speak with him. The only argument that Bowen presents in support of her assertion is that the combination of her intoxication, her alleged intellectual disability, and the officer's use of the Reid interviewing technique rendered her statements involuntary. But Bowen misses the key part of the coercive-influence exception: that "police coercion *has overborne a defendant's will*" to "render a *confession* involuntary."[31] Bowen never made an incriminating statement during this interview. In fact, she vehemently denied involvement in this case and presented the police with an alibi. The fact that Bowen never incriminated herself shows that she was not coerced by the police in any way.

Our review of this recorded interview suggests no "'intoxicat[ion] to the degree of mania' or ... hallucinati[on], functional [] insan[ity], or otherwise '[an

---

[28] *Id.* (internal citations omitted).

[29] *Id.* (internal citations omitted).

[30] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[31] *Smith*, 410 S.W.3d at 164.

11

inability] to understand the meaning of [her] statements,'" and Bowen has not come forth with any other evidence supporting a different conclusion. Lastly, Bowen has not supported, with any source of law, her assertion that intoxication, plus intellectual disability, plus the Reid technique, automatically results in suppression of an interview. So we find no merit in Bowen's argument that the trial court erred when it overruled her objection to the introduction of the third interview based on constitutional grounds.

Bowen also attempts to exclude evidence of this interview based on a KRE 403 finding that the depiction of her intoxication unduly prejudiced her in front of the jury. We fail to see how the trial court acted unfairly, unreasonably, arbitrarily, or in a way unsupported by sound legal principles in ruling a recorded interview between the defendant and the police about the defendant's whereabouts during the events in question had probative value that was not substantially outweighed by undue prejudice, prejudice which solely stems from the defendant's intoxication.

The trial court committed no reversible error in admitting the third recorded interview.

### D. The trial court did not commit reversible error in allowing the Commonwealth to introduce into evidence the fourth and fifth recorded interrogations of Bowen.

Bowen next argues that the trial court erred in allowing the Commonwealth to introduce the fourth and fifth recorded interviews with Bowen. The fact that this issue is preserved is undisputed.

Two days after Bowen's third interview, police interviewed Bowen a fourth time. The interviewer testified at trial that he again read Bowen her

12

*Miranda* rights, which she waived. The interviewer testified that Bowen then confessed to the crimes.

Bowen's issue with the admissibility of the fourth interview is that it contains 28 minutes of static that render whatever occurred during that time inaudible. When the recording picked up again after the static subsided, Bowen made incriminating statements and confessed to the crimes, describing in detail what happened. Bowen argues that because of this 28-minute interlude of static before the interview became audible, the finder-of-fact had no way to know what interrogation techniques were used during this time, that could have made her confession involuntary and thus inadmissible.

The interviewer apparently realized the recording defect when he reviewed the fourth recorded interview after its completion, so he then proceeded to read the *Miranda* rights to Bowen again. The interviewer explained to Bowen that the fourth interview may have been recorded improperly and that he needed to record the conversation again, and Bowen agreed to speak. The interviewer then explained to Bowen that he planned to pursue charges against her and again asked Bowen if she would talk with him, and Bowen again agreed to speak. Bowen then proceeded to incriminate herself further in this fifth interview, going into even more detail to describe her own involvement in the crimes for which she was ultimately charged and convicted.

Bowen's only argument on this issue is that the inaudible 28 minutes of the fourth interview prejudice her because the jury was unable to consider whether her confession should be rendered inadmissible based on the actions of the interviewer. Because of this, Bowen argues, the fifth interview should

13

also be rendered inadmissible because Bowen did not change her story from the fourth interview, which may have been allegedly coerced.

We find no reversible error in Bowen's baseless allegations. Bowen has not brought forward any evidence that a coercive interview made her confess. In fact, the interviewer testified at trial that he read Bowen her *Miranda* rights before the fourth interview. Because all the recordings show that the interviewer read Bowen the *Miranda* rights before each interview, there is no reason to doubt the in-court testimony of the interviewer. Lastly, Bowen has not asserted that the interviewer did anything wrong—she only asserts that the fact-finder has no idea what the officer did and *could have* wrongfully obtained an inadmissible confession. The four other recorded interviews evidence the interviewer having used the same, acceptable interview technique; and there is no reason to think that the interviewer deviated from these techniques during the first 28 minutes of the fourth interview.

Indeed, the only available evidence in this record supports the trial court's decision to allow the interviews to be admitted into evidence and played for the jury. So we find no reversible error on this issue.

### E. The trial court did not commit reversible error in denying Bowen a "missing evidence" jury instruction.

Bowen next argues that she was entitled to a favorable missing-evidence instruction for the 28-minute interlude of static in the recording of the fourth interview. Both parties agree that this issue is preserved for our review.

A missing-evidence instruction is necessary "only when the failure to preserve or collect the missing evidence was intentional and the potentially

14

exculpatory nature of the evidence was apparent at the time it was lost or destroyed."[32]

Bowen makes two arguments regarding this issue. First, she argues that this Court should adopt a more defense-friendly approach in deciding when to issue a missing-evidence instruction.[33] This Court in *Estep* gave a historical outline about the genesis of Kentucky's current missing-evidence instruction standard, which shows the deep roots that this standard has in Kentucky precedent.[34] We see no reason to depart from our current missing-evidence instruction standard in criminal cases.

Second, Bowen argues that a reasonable jury could have inferred that the Commonwealth did intentionally fail to preserve or collect 28 minutes of the interview. But we cannot accept this to be the case under these facts. The interviewer testified that a mechanical failure occurred with the recording, nothing more, and Bowen has not called into question the credibility of the interviewer in any way. Additionally, as we noted in *Estep*, nothing "precludes a defendant from exploring, commenting on, or arguing inferences from the Commonwealth's failure to collect or preserve *any* evidence. It just means that absent some degree of 'bad faith,' the defendant is not entitled to an instruction that the jury may draw an adverse inference from that failure."[35] Bowen has not come forth with anything more than total speculation to suggest that a jury

[32] *Coulthard v. Commonwealth*, 230 S.W.3d 572, 581 (Ky. 2007) (quoting *Estep v. Commonwealth*, 64 S.W.3d 805, 810 (Ky. 2002)).

[33] See University Med. Ctr. Inc. v. Beglin 375 S.W.3d 783 (Ky. 2011).

[34] *Estep*, 64 S.W.3d at 809-10.

[35] 64 Id. at 810.

could consider some nefarious conduct behind the 28 minutes of static. From this record there is nothing to support the giving of a missing-evidence instruction. Accordingly, no reversible error occurred in the trial court's denial of a missing-evidence instruction.

### F. Bowen was not unduly prejudiced by the potential polygraph examination discussion.

Bowen next alleges that reversible error occurred when the trial court denied her motion for a mistrial because the first recorded interview contained the mention of conducting of a polygraph exam. Both parties agree that this issue is preserved.

When the interviewer interviewed Bowen the first time, he engaged in a conversation with her about a "polygraph examination." We reproduce the entirety of the interviewer's and Bowen's conversation regarding the polygraph examination:

**Interviewer**: "[D]o you know what polygraph examination is?"

**Bowen**: "Polygraph examination? No, not really."

**Interviewer**: "You've never heard of a polygraph in your entire life? You may have heard ... 'lie detector.'"

**Bowen**: "Yeah."

**Interviewer**: "OK, do you know what that is?"

**Bowen**: "Yes."

**Interviewer**: "It's an examination where, we sort of use it as an investigative tool, it gives us, you know, kind of an idea ... whether somebody's being truthful with us. Would you be willing to take an examination, a polygraph examination, to sort of corroborate what you're telling me?"

**Bowen**: "Yeah."

No polygraph examination was ever conducted in this case.

16

"The mere mention of the words 'polygraph' or 'polygraph examiner' is not fatal, per se. There must arise a clear inference that there was a result and that the result was favorable, or some other way the inference could be deemed prejudicial."[36] If "no polygraph examination was administered ... there can be no inference to the jury either way."[37]

Here, based on this conversation alone—the only time that a "polygraph examination" was mentioned during Bowen's trial—it cannot be said that Bowen was prejudiced in any way. This situation is closely akin to the situation in *McQueen*, a case where no reversible error occurred because only the words at issue were mentioned and no polygraph exam was ever conducted.[38] We find that no reversible error arose here.

"A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity."[39] Nothing here presents the manifest necessity for granting of the "extreme remedy" of a mistrial.

### G. Bowen was not unduly prejudiced by the Commonwealth's mention of the sexual assault kits conducted on the female victims.

Lastly, Bowen argues that the repeated mention of "sexual assault kits" at trial unduly prejudiced Bowen, resulting in an inflamed and impassioned jury verdict. Bowen concedes that this issue is unpreserved, and that palpable error review is the appropriate standard of review on this issue.

---

[36] *McQueen v. Commonwealth*, 669 S.W.2d 519, 523 (Ky. 1984); *see also Tamme v. Commonwealth*, 973 S.W.2d 13, 33 (Ky. 1998).

[37] *Commonwealth v. Hall*, 14 S.W.3d 30, 33 (Ky. App. 1999).

[38] *McQueen*, 669 S.W.2d at 523; *Tamme*, 973 S.W.2d at 33.

[39] *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky. 2005) (overruled on other grounds by *Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010)).

17

During Bowen's trial, four witnesses testified about the evidence collected in this case, all mentioning the collection of "sexual assault kits." Bowen argues that the Commonwealth's eliciting of this testimony rose to the level of reversible palpable error because nothing about this case related to sexual assault so that even the simple mention of sexual assault under the circumstances of this case would further inflame the jury and unduly prejudice Bowen.

Palpable error requires a showing that the alleged error affected the "substantial rights" of a defendant, where relief may be granted "upon a determination that manifest injustice has resulted from the error."[40] To find that "manifest injustice has resulted from the error," this Court must conclude that the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable."[41]

Although the relevancy of sexual-assault-kit evidence in this case under these facts is questionable, the inclusion of this evidence cannot amount to palpable error. Nothing about the sexual-assault-kit evidence negatively implicated Bowen in any way. Bowen suggests that the mere utterance of this evidence could cause a jury to ponder about sexual assault or rape in conjunction with murder and arson, further inflaming the jury on an already heinous crime. But such speculation cannot satisfy the palpable error standard to warrant a reversal.

---

[40] *Id.*

[41] *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006).

## II. CONCLUSION.

Finding no reversible error in this case, we affirm the judgment of the trial court.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Mark Barry
Assistant Attorney General

# Supreme Court of Kentucky

2017-SC-000303-MR

AMANDA BOWEN                                                     APPELLANT

ON APPEAL FROM JOHNSON CIRCUIT COURT
V.                    HONORABLE JOHN DAVID PRESTON
NO. 16-CR-00205

COMMONWEALTH OF KENTUCKY                    APPELLEE

## ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION

The Petition for Rehearing, filed by the Appellant, of the Opinion of the
Court, rendered August 16, 2018, is DENIED, and the Opinion of the Court is
MODIFIED by substitution of the attached Opinion in lieu of the original
Opinion. Said modifications do not affect the holding of the Opinion as
originally rendered.

All sitting. All concur.

ENTERED: December 13, 2018.

_____
CHIEF JUSTICE