RENDERED: APRIL 8, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0496-MR

JERRY ALLEN STEWART                                             APPELLANT

APPEAL FROM KNOX CIRCUIT COURT
v.      HONORABLE MICHAEL O. CAPERTON, JUDGE
ACTION NO. 19-CR-00061-002

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

TAYLOR, JUDGE: A Knox Circuit Court jury found Jerry Allen Stewart guilty of

conspiracy to traffic in a controlled substance in the first degree (second or

subsequent offense) and possession of drug paraphernalia. Stewart appeals as a

matter of right. We reverse Stewart's being sentenced as a second or subsequent

offender, but otherwise affirm.

**Relevant Factual and Procedural History**

In December 2018, the Barbourville, Kentucky Police Department conducted surveillance on Stewart's home for about eight hours during which they saw roughly twenty people enter, and soon thereafter exit, from a staircase leading to an entrance on the second floor. The police stopped some of the visitors after they exited Stewart's home; they arrested six visitors, including at least one for drug possession. None of the visitors said Stewart had sold them drugs.

The police obtained a search warrant, and entered the home pursuant to it, the next day. Stewart and Hunter Brown were upstairs; Kyle Broughton was downstairs. The police found no drugs or drug paraphernalia on Stewart's person. However, they found a baggie of methamphetamine in a jacket upstairs. Officers also found other incriminating items in the house, including handguns, digital scales, plastic baggies and needles.

As part of their investigation, the police obtained Facebook Messenger records containing messages sent from an account belonging to someone called Ken Tucky. Ken Tucky sent messages which contained photos of Broughton to Broughton's girlfriend, Hunter Brown, so the police believed Ken Tucky was actually Broughton.

Ken Tucky also shared incriminating messages with someone named Jet Jones in November 2018. Those messages included Tucky asking Jones "[d]id

you sale [sic] the quarters I gave ya?" Jones responded "[y]es." Jones later messaged Tucky: "I need some stuff." Tucky responded "[y]ou got it sold bro[?]" Jones responded, "[y]es[,] they here." When Tucky asked Jones "how much ya need[,]" Jones eventually responded "[t]wo twentus [sic] and teen." Commonwealth's Exhibit 8. An officer testified that quarters, twentus [sic] and teens referred to quantities of methamphetamine.

The officers also found a November 2018 message from Jet Jones to Kaylyn Stewart in which Jones said: "Happy birthday to my little girl, I love you and am very proud of you. Keep doing what you [are] doing baby girl." Commonwealth's Exhibit 12. Kaylyn Stewart responded to Jones: "I love you so much. Thank you[,]" and added some emojis denoting love. *Id.* Officers also found a message from Jones to Tucky in which Jones said he had been "gone most of the day with Lana." Commonwealth's Exhibit 8. At trial, testimony revealed someone named Lana to own the home in which Stewart resided. The police thus believed Jet Jones to be Stewart.

Stewart was indicted for conspiracy to traffic in a controlled substance (second offense), first-degree possession of a controlled substance and possession of drug paraphernalia. Stewart was also indicted separately for possession of a handgun by a convicted felon. Stewart was acquitted of the felon in possession

-3-

charge by a jury in November 2018, and the drug-related charges proceeded to a jury trial held in January 2020.

At that trial, two officers testified about the surveillance, search of Stewart's residence and subsequent investigation. Broughton testified on behalf of Stewart. Broughton stated that Stewart agreed to let him (Broughton) temporarily stay at his (Stewart's) residence in an upstairs bedroom. Broughton testified that the methamphetamine, drug paraphernalia and coat in which the methamphetamine was found all belonged to him. He denied, however, that the needles were his. Broughton admitted to having multiple Facebook accounts but denied one of them being the account of Ken Tucky. Broughton admitted he pled guilty to an amended charge of illegal possession of methamphetamine, for which he received two-years' imprisonment.

Stewart testified in his own defense. He admitted to being a convicted felon. He said he had pled guilty to the previous charges because he was guilty but adamantly maintained that the methamphetamine and drug paraphernalia found in his home were not his. He said he agreed to let Broughton, a longtime acquaintance, stay a few days at his (Stewart's) home, during which time Stewart was away a significant portion of the time. Stewart also denied being known as Jet Jones on Facebook – in fact, he denied ever having had any social media accounts. When confronted with the message from Jet Jones wishing Kaylyn Stewart a

-4-

happy birthday, Stewart admitted that was his daughter's name and that her birthday matched the date of the message, but insisted he was not Jet Jones.

The jury acquitted Stewart of possession of methamphetamine. However, it found him guilty of possession of drug paraphernalia and conspiracy to traffic in a controlled substance, second offense. In accordance with the jury's recommendation, the trial court ultimately sentenced Stewart to a total of ten-years' imprisonment. Stewart then filed this appeal.

**Analysis**

Stewart raises a variety of issues, many of which are unpreserved. First, he contends he was entitled to a directed verdict on the conspiracy charge. Second, he contends he cannot be deemed to have committed a second or subsequent conspiracy to traffic in a controlled substance offense because he has never been convicted of that offense previously, his previous conviction having been for trafficking, not conspiracy to traffic. He next argues the trial court committed reversible error by informing the jurors in *voir dire* that Stewart was being tried for a second or subsequent offense. He then argues he is entitled to a new trial because an officer mentioned two guns having been found in Stewart's home but he had already been acquitted of the felon in possession of a handgun charge. Stewart also claims the jury instruction on conspiracy to traffic was improper. Finally, he raises a cumulative error argument.

**Directed Verdict**

When determining whether to grant a directed verdict, "the trial court must consider the Commonwealth's evidence as a whole, assume the evidence is true, and draw all reasonable inferences from the evidence in favor of the Commonwealth. The trial court may not consider questions of weight and credibility, those being the province of the jury." *Culver v. Commonwealth*, 590 S.W.3d 810, 813 (Ky. 2019) (citation omitted). A court "must assume that the evidence for the Commonwealth is true, regardless of whether the evidence, usually testimony, has been attacked or impeached." *Southworth v. Commonwealth*, 435 S.W.3d 32, 42 (Ky. 2014) (quotation marks and citation omitted). And "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

Here, the evidence "was not direct and consisted only of circumstantial proof. But direct proof of guilt is not necessary. Instead, the Commonwealth can prove all the elements of a crime by circumstantial evidence." *Southworth*, 435 S.W.3d at 42. There was sufficient circumstantial evidence here.

The police saw numerous people come to Stewart's home for extremely short visits; some of those visitors were soon thereafter arrested;

-6-

methamphetamine was found in Stewart's home; needles were found in multiple locations in Stewart's home; plastic baggies and digital scales were found in Stewart's home; and Stewart was present for at least some of the period of time during which Broughton and Brown were in Stewart's home. And the jury could have disbelieved Broughton's denial that he was Ken Tucky and Stewart's denial that he was Jet Jones. In fact, when determining the propriety of a directed verdict, we must assume the evidence for the Commonwealth is true even though it was attacked. *Id.*

In turn, the jury could have reached the reasonable inference that Broughton and Stewart were jointly engaged in a conspiracy to traffic drugs[1] since their Facebook messages mention needing "stuff" and asking if "it" had been "sold" and contain terms a police officer described as referring to drug quantities. "A jury has latitude to infer intent from the surrounding facts and circumstances." *Dishman v. Commonwealth*, 906 S.W.2d 335, 341 (Ky. 1995).

---

[1] Under Kentucky Revised Statutes (KRS) 506.040:

> (1) A person having the intention of promoting or facilitating the commission of a crime is guilty of criminal conspiracy when he:
>
> > (a) Agrees with one (1) or more persons that at least one (1) of them will engage in conduct constituting that crime or an attempt or solicitation to commit such a crime; or
> >
> > (b) Agrees to aid one or more persons in the planning or commission of that crime or an attempt or solicitation to commit such a crime.

We reject Stewart's argument that the jury's verdict was based on unreasonable inferences. A jury is permitted to make reasonable inferences. *Southworth*, 435 S.W.3d at 46. It is improper to build inferences on inferences *ad infinitum*, *id.* at 45, but that is not what occurred here. Like the defendant in *Southworth*, "[t]he real problem with [Stewart's] claim, however, is that he has not identified an unreasonable inference upon an inference through which the jury reached even one of the elements of the offense in this case, much less its guilty verdict as a whole." *Id.* at 46. It was not unreasonable for the jury to conclude that Broughton and Stewart were Ken Tucky and Jet Jones, respectively, nor was it unreasonable to conclude that Ken Tucky and Jet Jones were jointly engaged in selling, or attempting to sell, drugs. As in *Southworth*, "[n]othing suggests that the inferences the jury had to make to find guilt in this case are outside common experience, common sense, or reasonableness." *Southworth*, 435 S.W.3d at 45.[2]

---

[2] We reject Jerry Allen Stewart's one-sentence-long argument that the jury instruction on conspiracy was fatally flawed because it did not specifically require the jury to conclude the alleged acts occurred in Knox County. Stewart has not cited to where he raised that venue argument in circuit court. In any event, we agree that better practice is to include venue language in instructions. *See generally* 1 WILLIAM S. COOPER & DONALD P. CETRULO, KENTUCKY INSTRUCTIONS TO JURIES, CRIMINAL, § 1.12 (6th ed. 2021). However, there was evidence at trial that Stewart's residence, where the drugs and paraphernalia were found, is in Barbourville, which is in Knox County, and precedent holds that "omission of that element [venue] from an instruction is not prejudicial if there was an abundance of uncontradicted evidence that the offense occurred in the county in which the trial was held." *Graves v. Commonwealth*, 17 S.W.3d 858, 864 (Ky. 2000).

In short, the jury's verdict is rational, supported by the evidence and required no improper stacking of unreasonable inferences. Consequently, we affirm because "this Court cannot say that a jury would have been *clearly* unreasonable in reaching a guilty verdict." *Id.* at 44.

### Second or Subsequent Offense Designation

We now turn to Stewart's contention that he cannot be found guilty of conspiracy to traffic conviction, second or subsequent offense. Stewart contends, essentially, that this is his first conspiracy conviction so he cannot logically be convicted of having committed a second or subsequent offense. The Commonwealth responds, generally, by arguing that the General Assembly has shown its intent that persons found guilty of a drug-related conspiracy charge should receive the same punishment as persons convicted of the underlying drug offense. The parties have not cited, nor have we independently located, any Kentucky precedent clarifying whether a person convicted initially of trafficking can be convicted of a second or subsequent offense when later convicted of conspiracy to traffic.

As a prefatory note, Stewart admits that this argument is unpreserved. Consequently, we may only afford relief to Stewart upon satisfaction of the rigorous palpable error standard found in Kentucky Rule of Criminal Procedure (RCr) 10.26. An error is palpable only it was "apparent, and then only if it resulted

in manifest injustice, what we have characterized as either a skewed outcome or a proceeding so fundamentally tainted . . . as to threaten [the] defendant's entitlement to due process of law." *Commonwealth v. Mitchell*, 516 S.W.3d 803, 809-10 (Ky. 2017) (quotation marks and citations omitted). A manifest injustice is an error so egregious that it "so seriously affected the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable." *Conrad v. Commonwealth*, 534 S.W.3d 779, 783 (Ky. 2017) (quotation marks and citation omitted).

Drug-related offenses are generally contained in Chapter 218A of the Kentucky Revised Statutes. The Commonwealth stresses Kentucky Revised Statute (KRS) 218A.1402, which provides that "[a]ny person who commits a criminal conspiracy as defined in KRS 506.040 to commit any offense in this chapter shall be subject to the same penalties as provided for the underlying offense as specified in this chapter." And, generally, application of KRS 218A.1412(3)(b), which governs drug trafficking here, would make Stewart guilty of having committed a Class C felony if his conspiracy conviction is deemed a second or subsequent offense (which would subject him to five-to-ten years' imprisonment under KRS 532.060(2)(c)), but he would have only committed a Class D felony if the conspiracy conviction is not deemed a second or subsequent

offense (which would subject him to one-to-five years' imprisonment under KRS 532.060(2)(d)).

The Commonwealth argues KRS 218A.1402 resolves the matter, arguing the plain language of that statute means "any conviction for a conspiracy to traffic in a controlled substance [in the] first degree is subject to the same penalties, and enhancement, as would be a conviction for trafficking in a controlled substance [in the] first degree." Appellee's Brief at 13. We do not perceive the matter to be so simple.

KRS 218A.1402 undoubtedly means that a person who conspires to, for example, traffic drugs would be subject to the same sentence as someone who actually trafficked drugs. That is a change from the general statutory rule set forth in KRS 506.040(2) whereby a person found guilty of conspiracy is subject to a less severe sentence than someone guilty of the underlying offense. But KRS 218A.1402 does not define what offenses are second or subsequent offenses. In other words, KRS 218A.1402 shows that a defendant who is found guilty of conspiracy to traffic drugs would receive the same sentence as someone found guilty of trafficking drugs. But the sentence for someone found guilty of trafficking in drugs is dependent on whether that conviction is a first offense or a second or subsequent offense, and KRS 218A.1402 provides no guidance on that issue. Instead, KRS 218A.010(48) provides in relevant part that an offense is

-11-

deemed a second or subsequent offense under KRS Chapter 218A "if, prior to his or her conviction of the offense, the offender has at any time been convicted under this chapter, or under any statute of the United States, or of any state relating to substances classified as controlled substances or counterfeit substances . . . ."

It is uncontested that Stewart was convicted of trafficking in controlled substances previous to the conspiracy charges *sub judice*. That conviction was for an offense contained within KRS Chapter 218A. Thus, "prior to his or her conviction of" the conspiracy to traffic offense, Stewart had been "convicted under this Chapter [KRS 218A] . . . ." KRS 218A.010(48). But the charge *sub judice*, conspiracy, is not found within Chapter 218A. Instead, it is found within Chapter 506. The Commonwealth's viewpoint would mean that anyone charged with an offense found outside Chapter 218A would, nonetheless, be deemed a second or subsequent offender if they had previously been convicted of an offense within Chapter 218A. We cannot accept such a sweeping interpretation of KRS 218A.010(48) as it would confer second or subsequent offense status on people currently charged with an offense not found within KRS Chapter 218A, such as Stewart. KRS 218A.010(48) explicitly defines a second or subsequent offense only "for the purposes of this chapter . . . ." And conspiracy is not found within that chapter. Consequently, we interpret that subsection's reference to "the offense" to mean an offense found within KRS Chapter 218A,

-12-

which conspiracy is not. Such a construction is in accordance with the general rule that an ambiguous penal statute must be construed in favor of a defendant and all doubts about the construction of such a statute should be resolved in favor of lenity. *See, e.g.*, *White v. Commonwealth*, 178 S.W.3d 470, 483-84 (Ky. 2005); *Godby v. Commonwealth*, 187 S.W.3d 857, 861 (Ky. App. 2005).

Moreover, as a matter of general logic, a person cannot commit a second or subsequent offense without having committed that offense previously. After all, to do something a second time you must have already done it. And it is uncontested that Stewart has never previously been convicted of conspiring to traffic drugs.

Though factually distinguishable and based on an interpretation of their unique state statutes, our sister courts in Pennsylvania and Michigan have similarly recognized that someone convicted of conspiring to commit a drug offense generally does not qualify as a second or subsequent offender based upon a previous conviction for a substantive drug crime. *See, e.g.*, *Commonwealth v. Young*, 922 A.2d 913 (Pa. Super. Ct. 2007); *People v. Briseno*, 535 N.W.2d 559 (Mich. Ct. App. 1995).

The prejudice to Stewart is obvious, since it increased his potential sentence to five-to-ten years' imprisonment as a repeat offender, instead of only one-to-five years' imprisonment. Indeed, he received the maximum ten-year

-13-

sentence. In short, the erroneous designation of him as a second or subsequent offender led to Stewart receiving a fundamentally unfair, jurisprudentially intolerable sentence. We therefore reverse his conviction and sentence as a second or subsequent offender. Because there was sufficient evidence by which the jury could have found him guilty of conspiracy to traffic, and because we find no merit in his other arguments (as we will soon discuss), we do not reverse his conspiracy conviction. Instead, we reverse only his conspiracy sentence and remand with directions to conduct a new sentencing phase for that offense without the second or subsequent offender enhancement.

### Mentioning Second or Subsequent Offender Charge to Jury

"Evidence of a prior conviction introduced only for enhancement purposes should always be reserved to the penalty phase of a trial." *Hayes v. Commonwealth*, 175 S.W.3d 574, 594 (Ky. 2005). Nonetheless, during *voir dire*, the trial court read aloud the indictment to the prospective jurors – including stating that Stewart was charged with conspiracy to traffic in a controlled substance, "second offense." Stewart did not object. The question thus before us is whether the trial court's fleeting reference to the "second offense" allegation constitutes a palpable error.

The stray remark by the trial court was a mistake, given the bifurcation process of second or subsequent offenses. Albeit in a different context,

our Supreme Court has held that "[i]t is a fundamental principle that the introduction of a previous conviction during the process of determining guilt or innocence is prejudicial." *Dedic v. Commonwealth*, 920 S.W.2d 878, 879 (Ky. 1996). Here, however, Stewart has not shown that the two-word statement by the trial court was so egregious that it likely impacted the outcome of the trial or seriously impacted its overall fairness in light of the fact that Stewart later admitted during his testimony that he had been previously convicted for trafficking in a controlled substance. In any event, this argument is rendered moot by our reversing Stewart sentence as a second or subsequent offender.

### Evidence Regarding Handguns

Stewart was acquitted in a separate trial of the felon in possession of a handgun charge. Nonetheless, in the trial at hand the Commonwealth asked an officer what was found in the search of Stewart's home and the officer twice mentioned finding handguns. According to Stewart, "[i]t was pointless to hold a separate trial for . . . alleged illegal possession of the guns and then introduce evidence that the guns were found in the room Mr. Stewart was alleged to have been in during the officers' search for drugs." Appellant's Opening Brief at 19. Stewart admits this issue is unpreserved so, again, our review is for palpable error.

At least for the sake of argument, we will assume that mentioning the guns was improper since they were not directly linked to the drug charges. *See,*

*e.g.*, *Harris v. Commonwealth*, 384 S.W.3d 117, 123 (Ky. 2012) ("Weapons that are known to have no connection to the crime, however, are generally not admissible.").[3] Of course, here the firearms themselves were not introduced into evidence but were merely mentioned briefly.

Stewart cites to no case in which similar testimony was deemed a palpable error. The jury was faced with a credibility contest in which it had to, basically, choose to believe Stewart and Broughton or give credence to the Commonwealth's circumstantial evidence tying Stewart and Broughton together in a drug-trafficking conspiracy. Stewart has not shown that the fleeting references to firearms was such an egregious error as to unfairly stack the credibility deck against him. Indeed, our Supreme Court has found that admitting testimony and photographs of firearms unrelated to charges based on an alleged drug trafficking syndicate was a harmless error because "[t]he Commonwealth introduced ample other evidence from which a reasonable jury could find guilt. We find there is no substantial possibility that the result would have been any different, thus any error in this case was nonprejudicial and harmless." *Brewer v. Commonwealth*, 206 S.W.3d 313, 325 (Ky. 2006) (quotation marks and citation omitted). If admitting

---

[3] In other cases, there was testimony noting "that firearms in conjunction with drugs could be thought evidence of trafficking. Numerous courts have so held." *Goben v. Commonwealth*, 503 S.W.3d 890, 919 (Ky. 2016). We need not explore the linkage between firearms and drug trafficking here since the Commonwealth has not.

-16-

photographs of firearms unrelated to drug-related charges is a harmless error, fleeting testimony about firearms – unaccompanied by admission of physical evidence (such as photographs or the firearms themselves) – is not a palpable error.

### Jury Instruction on Conspiracy to Traffic

Stewart argues that the jury instruction on conspiracy to traffic was fatally flawed because it "did not identify any particular person, any particular conduct, or any particular controlled substance required to satisfy the statutory elements of conspiracy to traffic in a controlled substance." Appellant's Opening Brief at 21. Once again, Stewart admits this issue is unpreserved and so he requests palpable error relief,[4] citing precedent holding that "all unanimous-verdict violations constitute palpable error resulting in manifest injustice." *Martin v. Commonwealth*, 456 S.W.3d 1, 9-10 (Ky. 2015).

The Commonwealth contends Stewart invited any error in the instructions because his tendered instruction "was substantially similar to the one given to the jury." Appellee's Brief at 19. *See, e.g.*, *Kelly v. Commonwealth*, 554 S.W.3d 854, 866 (Ky. 2018) ("Invited errors amount to a waiver and are not

---

[4] Generally, unpreserved challenges to the propriety or adequacy of the contents of an instruction given to the jury are subject to palpable error review but unpreserved challenges to the propriety of giving a certain instruction at all are barred from appellate review. *See, e.g.*, *Martin v. Commonwealth*, 456 S.W.3d 1, 6 n.6 (Ky. 2015). We construe Stewart as first arguing no conspiracy instruction should have been given because he was entitled to a directed verdict, an argument we have rejected. Stewart then raises, as a type of alternative argument, this challenge to the adequacy of the conspiracy instruction, an argument suited to palpable error review.

subject to appellate review.") (quotation marks and citation omitted). However, Stewart's tendered instruction specifies a particular controlled substance, methamphetamine. The trial court's does not. Moreover, we note that the trial court's instruction specifically named Kyle Broughton "and/or others" as co-conspirators. Record (R.) at 95. Stewart's does not (and, accordingly, we reject Stewart's unfounded argument that the trial court's instruction failed to identify a co-conspirator). Stewart's tendered instruction also contained language requiring the jury to find that he possessed methamphetamine "with the intent of distributing it to another person[,]" R. at 82, which Stewart contends is a specific overt act; the trial court merely generically required the jury to find that Stewart and his co-conspirator(s) "engaged in an overt act or acts to further the conspiracy." R. at 95. In short, there are sufficient dissimilarities between Stewart's tendered instruction and the instruction given by the trial court to prevent application of the invited error doctrine.

We agree that the instruction given by the trial court was not perfect. For example, better practice is to name the alleged overt act(s) taken in furtherance of the conspiracy. *See* 1 WILLIAM S. COOPER & DONALD P. CETRULO, KENTUCKY INSTRUCTIONS TO JURIES, CRIMINAL, § 10.24 (6th ed. 2021). It also would have been better to specify that the controlled substance at issue was methamphetamine.

-18-

However, the evidence unambiguously informed the jury that the controlled substance at issue was methamphetamine, though the instruction did not.

The issue with the lack of a specific overt act in the instruction is more troubling. Stewart contends a unanimity problem was thus caused because jurors could have based their verdicts on different overt acts. "[A] scenario – a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof – violates the requirement of a unanimous verdict." *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013). But *Johnson* is distinguishable because only one criminal count of conspiracy was at issue here.

Conspiracy is also a unique offense since multiple overt acts may be taken by the co-conspirators in furtherance of a lone conspiracy. *See, e.g.*, 16 AM. JUR. 2d *Conspiracy* § 12 (2021) ("A single overt act is sufficient, although there may be one or many overt acts committed in furtherance of a single conspiracy.") (footnote and citation omitted). In other words, as long as the object of the conspiracy remains constant, the fact that multiple overt acts are taken in furtherance thereof does not mean a new conspiracy offense occurs with the undertaking of each overt act. Thus, a guilty verdict could be properly based upon multiple overt acts.

Though the parties have not cited (nor have we independently located) Kentucky precedent directly on point regarding whether each juror must agree on the same overt act to find a defendant guilty of conspiracy,[5] analogously, our Supreme Court has held that a defendant may properly be convicted under multiple alternative theories of how the defendant committed the crime, provided each is supported by the evidence. *Cox v. Commonwealth*, 553 S.W.3d 808, 812 (Ky. 2018).[6] Applied to a conspiracy charge, it would be logically permissible for the

---

[5] We note that the Supreme Court of Delaware has noted that states disagree on whether jurors must all agree on which overt act was committed. *Dougherty v. State*, 21 A.3d 1, 5 (Del. 2011). Similarly, federal courts are split. *See* 1 PETER J. HENNING, CORPORATE CRIMINAL LIABILITY, 3d § 6:7 (2020). However, many courts have agreed that a failure to give a specific unanimity instruction on the overt act element of a conspiracy charge is not plain error (i.e., a palpable error) when the matter is unpreserved. *Dougherty*, 21 A.3d at 6-7.

[6] Specifically, in *Cox* our Supreme Court found no error in an instruction which permitted jurors to find a defendant guilty of murder via alternate methods:

> A conviction for murder, according to the statute, does not require the fact-finder to determine the precise physical act of Cox that was the actual cause of Jayceon's death. All that must be shown, to satisfy the element of causation under the statute, is that the defendant did *something* to cause the death of the victim. . . . Because the jury instructions forced the jury to unanimous agreement that Cox caused Jayceon's death, regardless of the specific means, no unanimity error occurred because of the inclusion of the phrase "hitting, shaking or both."

*Cox*, 553 S.W.3d at 813 (paragraph break omitted).

Similarly, the offense of conspiracy requires the jurors to find that at least one overt act was taken in furtherance of the conspiracy. *See* KRS 506.050(1). It does not present a unanimity problem if multiple overt acts are presented via the proof – the jury is required only to determine unanimously that an overt act was taken in furtherance of the conspiracy; any failure of all twelve jurors to base their verdict on the exact same overt act does not present a unanimity problem. Indeed, Stewart cites to no case so holding. Of course, any potential problem could be completely eliminated by giving an instruction requiring the jury to find that the conspiracy was furthered by the commission of a specific overt act. *See* 1 COOPER AND CETRULO, *supra*, § 10.24.

-20-

jury to convict Stewart due to his or his co-conspirator(s) having taken sundry overt acts, regardless of whether all twelve jurors based their verdict on the same overt act. Simply put, though we cannot enthusiastically endorse the instruction as given by the trial court, we cannot conclude it was so improper as to necessitate palpable error relief.

**Cumulative Error**

Finally, Stewart argues he is entitled to a new trial due to cumulative error, which our Supreme Court has described as "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair" and which properly applies "only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Mason v. Commonwealth*, 559 S.W.3d 337, 344-45 (Ky. 2018) (quotation marks and citations omitted). Stewart's arguments to the contrary notwithstanding, we perceive no cumulative error here as, on balance, Stewart's trial was not fundamentally unfair. *Id.* ("Simply put, the errors that occurred in this case did not rise to the level of reversible cumulative error because we cannot say that anything the trial court did or failed to do rendered Mason's trial 'fundamentally unfair.'") (quotation marks and citation omitted).

-21-

**Conclusion**

For the foregoing reasons, the judgment of the Knox Circuit Court is reversed as to Stewart being sentenced as a second or subsequent offender. The matter is remanded for a new sentencing phase on the conspiracy charge without the second or subsequent offender enhancement. The judgment is otherwise affirmed.

MAZE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

THOMPSON, K., CONCURRING IN PART AND DISSENTING IN PART: I agree with the majority's resolution of this case on all of the issues, save one. I disagree with the majority opinion that Stewart was properly convicted of conspiracy to traffic under the "second or subsequent offense" designation. While I agree with the majority opinion that KRS 218A.1402 does not resolve the question of whether Stewart's Class D felony can be elevated to a Class C felony pursuant to KRS 218A.1412(3)(b), I disagree with its conclusion that KRS 218A.010(48) allows for such stacking of penalties for an offense committed under a different chapter.

Under KRS 506.040, a criminal conspiracy to commit a crime is generally classified as being one class lower than committing the crime would be, as a conspiracy to commit a crime is generally considered less serious than a

-22-

completed offense.  Therefore, when the underlying crime is a Class C or D felony, a conspiracy to commit such a crime generally becomes a Class A misdemeanor. KRS 506.040(2)(d).  However, KRS 506.040(2) provides an exception if there is a "specific statute to the contrary[.]"

KRS 218A.1402 provides such an exception, stating that "[a]ny person who commits a criminal conspiracy as defined in KRS 506.040 to commit any offense in this chapter shall be subject to the same penalties as provided for the underlying offense as specified in this chapter."  Therefore, conspiracy to commit trafficking is subject to the same penalties as trafficking, thereby making it a Class D felony.

The majority Opinion would allow for stacking the class of crime a second time pursuant to KRS 218A.010(48) definition for "[s]econd or subsequent offense[.]"  I disagree that this is appropriate under the wording of KRS 218A.010(48), which specifies that "for purposes of this chapter an offense is considered as a second or subsequent offense if, prior to his or her conviction of the offense, the offender has at any time been convicted *under this chapter* [Chapter 218A], or under any statute of the United States, or of any state relating to substances classified as controlled substances[.]"  (Emphasis added.)

A conviction for conspiracy to traffic is not a conviction under Chapter 218A.  Instead, conspiracies are prohibited pursuant to Chapter 506, which

-23-

covers inchoate crimes, with the factors specified in KRS 506.040(1) needing to be satisfied for a conviction.  I believe it would be nonsensical to interpret KRS 218A.010(48) as providing that a trafficking offense under Chapter 218A could be the predicate offense for a subsequent offense of conspiracy to traffic under Chapter 506, when a conspiracy to traffic offense under Chapter 506 could not be the predicate offense for a trafficking offense under Chapter 218A.  I believe that although there was a first offense under KRS 218A.010(48), there is not a second offense under this chapter.  KRS 218A.1402 already elevated the penalties faced under conspiracy to commit a drug offense, and it is not appropriate to stack an additional penalty on top of that one without a specific directive to that effect in the statutes.

Additionally, if instead the application of KRS 218A.010(48) is interpreted as being ambiguous as to whether Stewart's conspiracy conviction is a second or subsequent offense, we should apply the rule of lenity rather than increase his punishment twice from what would normally be a Class A misdemeanor.  As explained in *White v. Commonwealth*, 178 S.W.3d 470, 483-84 (Ky. 2005):

> [W]hen "[i]t is not possible to determine which meaning the General Assembly intended . . . the movant is entitled to the benefit of the ambiguity." *Haymon v. Commonwealth,* 657 S.W.2d 239, 240 (Ky. 1983); *see also Commonwealth. v. Colonial Stores, Inc.*, 350 S.W.2d 465, 467 (Ky. 1961) ("Doubts in the construction

of a penal statute will be resolved in favor of lenity and against a construction that would produce extremely harsh or incongruous results or impose punishments totally disproportionate to the gravity of the offense . . . ."); *Atlantic Coast Line R. Co. v. Commonwealth,* 302 Ky. 36, 53, 193 S.W.2d 749, 758 (1946) ("[A] legislative intent not clearly revealed may be presumed to hold in contemplation the reasonable and probable. If something else was in view, it should not have been left to implication. There will be no assumption of a purpose to visit oppression."). . . . The rule of lenity requires any ambiguity in a statute to be resolved in favor of a criminal defendant.

Accordingly, I dissent in part.

BRIEFS FOR APPELLANT:

Steven Nathan Goens
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General
Frankfort, Kentucky